Kelly Michelle REPKO

v.

**CHICHESTER SCHOOL DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 9, 2006.

Decided Aug. 10, 2006.

Allison S. Petersen, Huntingdon Valley, for appellant.

Christopher J. Heavens, Boothwyn, for appellee.

BEFORE: COHN JUBELIRER, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Chichester School District (the School) appeals an order of the Court of Common Pleas of Delaware County that denied its Motion for Post–Trial Relief after a jury awarded damages in the amount of $250,000.00 to Kelly Michelle Repko (Repko). The award of damages was in compensation for the School's alleged negligence when a table [1] that was improperly placed in the School's gymnasium fell on Repko, causing injuries. (Motion for Post–Trial Relief.)

The relevant facts are undisputed. On June 16, 2003, Repko, a student at the School, was playing basketball during gym class. The basketball went into the bleachers, which were collapsed into the wall, and Repko went to retrieve it. A folding table was leaning on its side against the bleachers. The table had been used for a graduation ceremony the night before and was improperly stored in the gym. As Repko was walking away from the bleacher area with the basketball, the table fell over, struck Repko on the back of her right calf and ankle, and caused a deep cut, which required several stitches.

Repko filed a complaint that averred she sustained personal injuries as a result of the School's negligent maintenance of real

---

1. We note that, at argument, counsel for Repko referred to the table as a "riser." However, the record and briefs of both parties identify the object as a table and, as such, this opinion will refer to it as a table.

property under its care, custody and control. The School filed preliminary objections in the nature of a demurrer, based upon immunity afforded it under what is commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–8542. However, the preliminary objections were overruled by the trial court without an opinion. At the close of discovery, the School filed a motion for summary judgment based on immunity because it was uncontested that a table, which was not affixed to the real property of the District, caused Repko's injury. Again, the trial court denied the motion without an opinion.

In June 2005, a three-day jury trial took place and, at the close of the trial, the School motioned for nonsuit based on immunity, which the trial court denied. Thereafter, at the close of the evidence, the School moved for a directed verdict, which the trial court, again, denied. Prior to closing statements and over the objections of the School, the trial court, *sua sponte*, determined that representatives for the School admitted the table constituted a dangerous condition and, thus, that the School had admitted negligence. The trial court further determined that it would not charge the jury with the School's suggested jury instructions on immunity and liability, thus removing the issue of liability from the jury. The jury ultimately awarded Repko $250,000.00 in damages and the School filed a timely Motion for Post–Trial Relief, which was denied. The trial court, pursuant to Pa. R.A.P.1925(a), issued an opinion supporting its ruling.

The trial court's determination that the School was not entitled to immunity under the Tort Claims Act was based upon its interpretation of *Grieff v. Reisinger*, 548 Pa. 13, 693 A.2d 195 (1997), and cases following its approach. *See Hanna v.*

*West Shore School District*, 717 A.2d 626 (Pa.Cmwlth.1998); *Erb v. Greenmount Cmty. Fire Co.*, 63 Pa. D. & C.4th 353 (2003). In *Grieff*, our Supreme Court held that the real property exception to governmental immunity applied to injuries caused by a fire chief's alleged negligent care of a fire association's property. There, the fire chief was removing paint from the floor near the kitchen by pouring paint thinner onto the floor. The paint thinner flowed across the floor, under the refrigerator, and ignited into a fire causing severe injuries to a bystander. In addressing the real property exception, the Court stated that the exception "provides that a local agency may be liable for its employees' or its own negligence related to the 'care, custody or control of real property' in its possession." 548 Pa. at 15, 693 A.2d at 197 (quoting 42 Pa.C.S. §§ 8542(a)(2)-(b)(3)). The Court went on to note that, "[h]ere, [the fire chief's] care of the Fire Association's property caused the fire that injured [the bystander]. While he was removing paint **from the floor, therein caring for the real property,** it ignited causing the resultant injuries . . . ." *Id.* at 16, 693 A.2d at 197 (emphasis added). Thus, the Court held that, under the plain language of the real property exception, the chief and the Fire Association were not immune from suit. *Id.*

The trial court, here, applied the analysis in *Grieff* and found that the School had negligently cared for the gymnasium area. In so doing, it specifically found the Supreme Court's analysis in *Blocker v. City of Philadelphia*, 563 Pa. 559, 763 A.2d 373 (2000) not to be applicable to the case. In *Blocker*, the Supreme Court held that the real estate exception to immunity did not apply to a city for its negligent maintenance of a bleacher. There, a citizen was injured when a bleacher that she was sitting on collapsed at a city concert facility. The trial court granted a motion for summary judgment in favor of the City based

on its immunity under the Tort Claims Act, and this Court reversed. *Id.* at 561–62, 763 A.2d at 374. This Court held that there was a question as to whether the intent of the City was to consider the bleacher part of the realty. However, the Supreme Court reversed and held that consideration of the intention of an owner regarding whether a chattel has been permanently placed on real property is only relevant where the chattel has, in fact, been affixed to the realty. *Id.* at 562–63, 763 A.2d at 375. Because the Supreme Court held that the evidence was *clear* that the bleacher was not attached to the ground, the intent of the City was irrelevant; absent an attachment to realty, a chattel remains personalty. *Id.* at 563, 763 A.2d at 375–76. Accordingly, the Supreme Court held that because it was undisputed that the bleacher, which caused the injury, was *personalty*, any negligent maintenance of it did not fall within the real property exception to immunity.

The trial court expressed its reasoning as follows:

[U]nlike *Blocker*, where the bleachers['] defective condition caused the injury, here it was the negligent care of the gymnasium area, which is real property, which caused the injuries to Repko.

Like the *Grieff* and *Hanna* decisions, this Court determined that the manner in which the School District cared for its real property was what caused the injuries.... In this instance there was no claim that a defect in the personalty caused the injuries to Repko. With the admissions of the defense witnesses that the table was placed in the gym negligently and caused a dangerous condition, it was clear to this Court that this claim fell within the real estate exception.

(Trial Ct. Op. at 8.) The School appealed.[2,3]

Although the School raises several arguments, because we agree that the School is immune from liability pursuant to the Tort Claims Act, we do not reach its other arguments.[4]

2. The two consolidated appeals are based on the same underlying facts. On June 25, 2005, a jury entered a verdict in favor of Repko and the School filed a timely Motion for Post–Trial Relief, which was denied on November 10, 2005. Thereafter, the School filed a Notice of Appeal on December 5, 2005, which was docketed at 2401 C.D.2005. However, prior to the denial of the Motion for Post–Trial Relief and the School's appeal, the jury's verdict had not been reduced to judgment. On March 22, 2006, the Prothonotary entered judgment in favor of Repko. To ensure that the School's right to appeal was perfected, on April 10, 2006, the School filed a Notice of Appeal from the entry of judgment, and said appeal is docketed at 712 C.D.2006. Subsequently, on April 20, 2006, this Court granted the School's Application to Consolidate Pending Appeals at 712 C.D.2006 and 2401 C.D. 2005.

3. This Court's standard of review of the trial court's denial of post-trial relief is limited to

determining whether the trial court abused its discretion or committed an error of law. *Greylock Arms, Inc. v. Kroiz*, 879 A.2d 864, 865 n. 2 (Pa.Cmwlth.2005).

4. In addition to arguing that the School is immune under the Tort Claims Act, the School also argues that the trial court erred in denying its post-trial relief because: (1) the determination of liability should not have been removed from the province of the jury, the jury should have been charged with instructions on negligence and immunity, and the jury should have been provided with the School's proposed verdict slip; (2) Repko's expert, Dr. Lee Cohen, was not qualified to testify about the permanency of Repko's scar; (3) a new trial should have been granted due to the excessiveness of the verdict; (4) the health insurance benefits received by Repko should have been deducted from the verdict; and, (5) the jury should not have been instructed that damages could be awarded to Repko for pain and suffering.

With regard to the Tort Claims Act, the School argues that, before the real property exception to immunity is applicable, the Court must first determine that the cause of the injury was the real property or was sufficiently related to the real property. The School highlights the undisputed fact that the object that caused the injury to Repko was a table, which was not affixed to the School's real property. Therefore, it contends that, pursuant to the Supreme Court's opinion in *Blocker*, Repko's claim does not fall within the real property exception to immunity because the object that injured Repko was an item of personalty, and not real property. On the other hand, Repko relies on the Supreme Court's opinion in *Grieff* and our opinion on remand, in which we held that the real property exception to immunity applied because the government entity cared for the real property, ie. the floor, in a negligent manner. For the reasons that follow, we agree with the School that *Blocker* applies to the case at bar.

■ Local government agencies are generally immune from tort liability under the Tort Claims Act. *Wells v. Harrisburg School District*, 884 A.2d 946 (Pa.Cmwlth. 2005) (finding school districts are local government agencies for purposes of 42 Pa.C.S. § 8541–42 immunity provisions). There are limited exceptions to such immunity and an injured party may recover in tort from a local governmental agency if:

> (1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories.

*Wells*, 884 A.2d at 948 (citing 42 Pa.C.S. § 8542). Section 8542 provides an exception to immunity for the "care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency." 42 Pa.C.S. § 8542(b)(3).

■ At the outset, we recognize that there are two approaches that can be used to determine whether to apply the real estate exception to immunity under the Tort Claims Act, and that, at times, deciding which approach to apply under a given set of facts is challenging. Under the *Blocker* approach, the determinative inquiry is whether the injury is caused by personalty, which is not attached to the real estate, or by a fixture, which is attached. Under the *Grieff* approach, the determinative inquiry is whether the injury is caused by the care, custody or control of the real property itself. Both approaches have been applied by the courts.

The distinction between personalty and fixtures used in *Blocker* has been the traditional approach for determining whether or not chattels are part of the real estate. In its seminal opinion, *Clayton v. Lienhard*, the Supreme Court clearly established the test:

> Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty.... Second, those which are so annexed to the property, that they cannot be removed without material injury to the real estate or to themselves; these are realty.... Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or

the property to which they are annexed; these become part of the realty or remain personalty, depending on the intention of the parties at the time of annexation. . . .

312 Pa. 433, 436–37, 167 A. 321, 322 (1933).

Our Court applied this test in a case involving the Tort Claims Act when, on remand, the Supreme Court instructed us to evaluate whether a wood lathe that injured a student, was personalty or a fixture. In *Canon–McMillan School District v. Bioni,* 127 Pa.Cmwlth. 317, 561 A.2d 853 (1989) (*Canon–McMillan III* ), a student was injured when a wooden bowl, which the student was sanding on a wood lathe as part of an in-class assignment, broke apart. The trial court initially entered judgment in favor of the student in his case against the school district, denied the school district's motion for a judgment notwithstanding the verdict, and the school district appealed. We reversed the trial court and ordered a new trial. The school district appealed to the Supreme Court and the matter was remanded to this Court to determine whether the wood lathe was an item of realty or personalty. On remand, we applied the test in *Clayton* and determined that the wood lathe fell within the third category because it was connected with the real estate and could be removed without destroying or materially injuring the lathe or the property to which it was annexed. This Court determined that the school district did *not* intend the lathe to be part of the realty at the time it was annexed. *Id.* at 854–55. Therefore, we directed the trial court to enter judgment in favor of the school district because the student was injured by a piece of personalty, thus, making the school district immune from liability under the Tort Claims Act.

This Court applied the *Blocker* approach in *Rieger v. Altoona Area School District,*

768 A.2d 912 (Pa.Cmwlth.2001), in which a cheerleader sought damages against a school district after she fell on the gym floor during a stunt. The cheerleader argued that the school was negligent in its care, custody and control of the gym by not placing mats on the hardwood floor. In support of her argument, she relied on *Singer v. School District of Philadelphia,* 99 Pa.Cmwlth. 553, 513 A.2d 1108 (1986), in which this Court held that matting, as a necessary element of a gym's hardwood floor when it is used as a gymnastic stunt area, constituted an aspect of the school's care, custody and control of its real property, subject to the real property exception. *Rieger,* 768 A.2d at 915. However, based upon *Blocker,* which was decided after *Singer,* this Court, in *Rieger,* declined to apply *Singer* and found that the claim did not fall within the real property exception to immunity, stating that:

> the *Singer* holding . . . is no longer viable following *Blocker.* The record evidence establishes that the gymnasium mats in question were in no way affixed to the real property, and as such, constitutes personalty. Therefore, even assuming that failure to provide mats in the cheerleading practice area amounted to a negligent act . . ., such negligent act would not fall within the real property exception to the Act.

*Rieger,* 768 A.2d at 915–16.

In addition to applying the *Blocker* approach, our Court has also applied the *Grieff* approach to determine whether the real estate exception applies. For example, in *Hanna,* a mother sustained injuries when she slipped and fell while walking down a school corridor for the purpose of attending a parent-teacher conference. The parties stipulated that water had accumulated where she slipped on the corridor floor as a result of the "damp-mopping of an otherwise sound, lev-

el and unblemished floor by an employee of the ... School District." 717 A.2d at 627 (citation omitted). The trial court entered summary judgment in favor of the school and the mother appealed. This Court affirmed and the Supreme Court reversed and remanded for this Court to further consider the matter in light of *Grieff*.[5] Accordingly, because the facts in *Grieff* were indistinguishable from those involved in *Hanna*, this Court reversed the trial court's order granting summary judgment and remanded for a new trial.

■ In the case at bar, Repko argues that the *Grieff* approach should be applied because the negligent act was the care, custody and control of the gymnasium area by failing "to remove a dangerous condition on the property," i.e., the table. (Repko Br. at 8.) Likewise, the trial court held that *Grieff* controlled because the holding in *Grieff* was that the fire chief "was not immune when the care of personalty caused a dangerous condition to occur on the real property, which they control." (Trial Ct. Op. at 4.) We disagree with Repko's argument that the *Grieff* approach controls the outcome of this case and, likewise, the trial court's interpretation of *Grieff*.

Contrary to the trial court's interpretation of *Grieff* that the government entity was not immune because "the care of personalty caused a dangerous condition to occur on the real property," the actual holding in *Grieff* clearly stated that there was no immunity due to *the negligent care of the real property—ie., the floor*—when paint thinner was poured on the floor, which ignited and caused severe injuries. Similarly, the holding in *Hanna* was based on the injuries suffered from improperly caring for the real property, i.e., the floor. Here, although Repko frames the issue in terms of the negligent care of the gymnasium, which is real property, in fact, Repko was *injured by a table* that fell on her in the gymnasium. Thus, the facts in this case are very similar to the facts in *Blocker* and its progeny, which have held that the real property exception to immunity does not apply where a person is injured by the negligent maintenance of *personalty*.

Like the plaintiffs in *Canon–McMillan III, Rieger* and *Blocker*, Repko was injured by an item of *personalty*, and not real property. Therefore, consistent with those opinions, we will apply the *Blocker* approach, and find that the School was immune under the Tort Claims Act. To

5. On remand, Judge Doyle noted that the *Grieff* decision "represents a radical departure from the governmental immunity analysis previously set forth...." *Hanna*, 717 A.2d at 629. This comment eludes to the Supreme Court's decision in *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995), wherein the Court held that two statutes dealing with governmental and sovereign immunities, the Tort Claims Act and the Sovereign Immunity Act, 42 Pa.C.S. § 8521 et. seq., are to be interpreted consistently, as they deal with indistinguishable subject matter. *Id.* at 601, 664 A.2d at 1344. Cases which interpret the real estate exception to the Sovereign Immunity Act find that liability against a governmental entity is predicated upon proof that a "condition of governmental realty itself, deriving, originating from, or having the realty as its source" caused the plaintiff's injuries. *Id.* at 605, 664 A.2d at 1346. However, subsequent cases have noted that the language of the real estate exception under the Sovereign Immunity Act "varies markedly from the language [the legislature] chose for subjecting a local agency to liability under [the Tort Claims Act]...." *Jones v. Southeastern Pennsylvania Transportation Authority*, 565 Pa. 211, 226, 772 A.2d 435, 444 (2001). Therefore, the Supreme Court, in *Jones*, made clear that the legislature did not intend the real estate exception under the Sovereign Immunity Act and the real property exception under the Tort Claims Act to be interpreted in "lockstep." *Id.*

hold, as the trial court did, that an item of personalty which injures someone on real property is within the care, custody and control exception to immunity, would bring almost any injury on school district property within the real property exception to immunity. Such a holding would defeat the purpose of immunity under the Tort Claims Act, which must be strictly construed to further the legislature's intent to provide immunity. *Finn*, 541 Pa. at 601, 664 A.2d at 1344. Accordingly, the trial court's order is reversed.[6]

## ORDER

**NOW,** August 10, 2006, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby reversed.

---

**6.** Because we reverse the trial court's order based on the first issue raised in this appeal by the School, there is no need to address the School's remaining issues.