## LOYALSOCK TOWNSHIP AREA SCHOOL DISTRICT

v.

## LOYALSOCK CUSTODIAL MAINTE-NANCE, Secretarial and Aide Association a/k/a Loyalsock Township Educational Support Professionals, PSEA/NEA, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 9, 2007.

Decided July 17, 2007.

---

**76**

James T. Rague, Wellsboro, for appellant.

E. Eugene Yaw, Williamsport, for appellee.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and McGINLEY, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

The Loyalsock Custodial Maintenance, Secretarial and Aide Association (Union) [1]

1. The Union is also known as Loyalsock Township Educational Support Personnel Professionals.

appeals from the June 16, 2006, order of the Court of Common Pleas of Lycoming County (trial court), which vacated an arbitrator's decision to reinstate Connie Hamilton (Employee) to her employment with the Loyalsock Township Area School District (District). We reverse.

Employee worked for the District for approximately twenty-eight years, most recently as a custodian in a District elementary school. On January 14, 2005, Employee was struck in the face by a piece of equipment while she was working. The following day, Employee sought medical treatment at the Susquehanna Health System (SHS) emergency room, where SHS personnel advised Employee that a drug and alcohol screen was required because the injury may involve a workers' compensation claim. Employee declined to take the test, stating that she would pay for the medical services herself and would not seek workers' compensation benefits.

On January 17, 2005, SHS personnel advised the District that Employee had not submitted to testing. Over the next several days, the District's business manager directed Employee to take the blood test. On January 24, 2005, Employee was informed that she could not report to work until she submitted to drug and alcohol screening. Employee called in sick on January 25th and 26th and finally reported to the hospital for testing on the evening of the 26th. On January 31, 2005, SHS notified the District that Employee's screening was positive for marijuana.

When confronted with the test results, Employee at first denied using marijuana, but then she admitted that she took a few puffs on a marijuana cigarette on the eve-ning of January 14th, following her injury, while she was off-duty and off school property. Employee stated that she was not a regular user of marijuana, but she offered to enter rehabilitation treatment if it would save her job. At that point, the District's business manager indicated that he would recommend Employee's termination.

On her own initiative, Employee submitted to a second drug and alcohol blood screening on February 7, 2005, and the results were negative for all drugs. Employee also reported to Genesis House, the first drug and alcohol service provider listed in the District's drug and alcohol policy.

By letter dated February 8, 2005, the District informed Employee that the District would be recommending her dismissal to the school board based on charges of insubordination and violation of the District's policy regarding use of a controlled substance. The letter further advised Employee that she had a right to demand a hearing on the matter, which would be conducted pursuant to the Local Agency Law.[2] The school board held a hearing on February 15, 2005,[3] and voted to terminate Employee's employment, (R.R. at 32a), in accordance with District Policy 551–Drug and Substance Abuse (Policy 551), which provides that "the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited *in the employe's workplace.*" (R.R. at 36a, 40a (emphasis added).) After Employee was informed of her termination, she filed a grievance, asserting a lack of just cause for her termination in violation of Article 28 of the parties' collective bargaining agreement (CBA) and a denial of due process. Pursuant to the CBA, an arbitrator

---

2. 2 Pa.C.S. §§ 551–555, 751–754.

3. Employee did not attend the hearing, apparently due to uncertainty between the parties as to whether Employee was compelled by law to choose between her grievance rights under the parties' collective bargaining agreement (CBA) and her right to a hearing before the school board. (R.R. at 20a–26a.)

was appointed to hear the grievance, and a hearing was held on September 20, 2005.

Before the arbitrator, the District asserted that if a drug is present in an employee's system, the drug is in the workplace, and, therefore, Policy 551 applies. The District further argued that it has the right to interpret its own policies. The District also asserted that providing a safe environment for students is a core function of the District and that a public employer cannot bargain away its right to discipline employees for behavior that strikes at the employer's core functions. In response, the Union contended that just cause did not exist to support Employee's termination. The Union asserted that Policy 551 only prohibits drug use in the workplace and that the use in this case did not occur at work. Noting that the written policy sets forth a range of disciplinary measures that include required participation in an approved rehabilitation program, the Union also contended that the District's discipline of Employee effectively converted Policy 551 to a zero tolerance policy, without notice to its employees. The Union cited Employee's twenty-eight years of service as a mitigating factor and requested a remedy that was more reasonable under the circumstances.

In a decision dated November 18, 2005, the arbitrator determined that Employee did not violate Policy 551. In reaching this conclusion, the arbitrator observed that the plain language of Policy 551 prohibits drug use *in the workplace* and defines "drug-free workplace" as "the site for the performance of work done in connection with the performance of their job at which employees are prohibited from engaging" in the specified conduct. (R.R. at 35a.) The arbitrator noted that Employee's drug use occurred offsite and that the District did not present evidence of any impact on Employee's work performance. The arbitrator further noted that, absent such evidence, an employer generally cannot control an employee's off-duty behavior. The arbitrator granted Employee's grievance in part, reinstating her to her former position with the District as of the date of his decision. Citing Employee's "protracted delay in admitting marijuana use," (Arbitrator's decision at 8), the arbitrator indicated that the period from Employee's termination to the date of the award would constitute a suspension without pay.

The District appealed to the trial court, arguing that the arbitrator exceeded his authority and that his award contravenes the rights afforded the District under section 514 of the Public School Code of 1949 (Code) [4] to remove employees for cause. The trial court initially noted that courts reviewing an arbitrator's award apply a two-prong analysis commonly known as "the essence test." Under the essence test, the court must determine: (1) whether the issue presented is encompassed by the terms of the collective bargaining agreement, and (2) whether the arbitrator's interpretation can be rationally derived from that agreement. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999).[5] The parties agreed

---

4. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 5–514. Section 514 of the Code sets forth the rights of a board of school directors to remove any employee for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

5. Justice Cappy's majority opinion in *Cheyney University* includes a historical review of cases addressing the role of appellate courts when reviewing labor arbitration awards. As noted in this opinion, Pennsylvania courts have stated the applicable standard of review using differing verbiage and indicating vari-

that the only issue before the trial court was whether the arbitrator's award can be rationally derived from the CBA. (Trial ct. op. at 4.)

Citing *Greene County v. District 2, United Mine Workers of America*, 578 Pa. 347, 852 A.2d 299 (2004), and *City of Easton v. American Federation of State, County and Municipal Employees, AFL–CIO, Local 447*, 562 Pa. 438, 756 A.2d 1107 (2000), the trial court stated that our courts have modified the essence test where a governmental employer is involved and will not allow a collective bargaining agreement to be interpreted to allow public employers to relinquish powers that are essential to the discharge of their core functions. The trial court quoted the following language from *Greene County:*

> Due to their unique nature and role, public employers must be able to perform the functions they are charged to carry out by our citizenry. Consistent with this status, our Court has recognized that public employers cannot be compelled in arbitration to relinquish powers that are essential to the proper discharge of their functions. Thus, while as a general proposition, an arbitrator has broad authority to interpret an undefined provision regarding termination for just cause in a collective bargaining agreement, to permit an arbitrator to interpret the agreement as to require reinstatement of an employee who was determined to have engaged in egregious misconduct [6] that strikes at the very core function of the public enterprise would be to deprive the employer of its ability to discharge that essential function.

*Greene County*, 578 Pa. at 362, 852 A.2d at 308 (citations omitted).

The trial court observed that the arbitrator had acknowledged that prohibiting drug use in the work place is a core function of the District. Determining that the school district's interpretation of its own policy should be given credence,[7] the trial court concluded that the arbitrator exceeded his authority by substituting his own judgment in place of the school board's in

---

ous degrees of judicial deference. The court in *Cheyney University* rejected the "reasonableness standard," which recently had been applied in *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989); *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988); and *Philadelphia Housing Authority v. Union of Security Officers # 1*, 500 Pa. 213, 455 A.2d 625 (1983), stating that such a standard encourages a reviewing court to assert its own brand of labor relations philosophy. In Cheney University, the court repeatedly emphasized that the role of a reviewing court is one of deference.

6. According to the trial court, "the arbitrator obviously found [Employee's] conduct egregious" because he suspended her for nine months without pay. (Trial ct. op. at 7.) However, the arbitrator states that the suspension was based on the fact that Employee "refuse[d] to admit to such conduct [drug use in the off hours]" until she faced the results of the drug test. (Arbitrator's decision at 8.) Thus, the conduct on which the arbitrator "obviously" based the suspension was *not* Employee's off-duty marijuana use, but her delay in admitting that. Moreover, we cannot agree that a nine-month suspension "obviously" means that the arbitrator found Employee's conduct "egregious."

7. The trial court cited *Giles ex rel. Giles v. Brookville Area School District*, 669 A.2d 1079 (Pa.Cmwlth.1995), *appeal denied*, 544 Pa. 686, 679 A.2d 231 (1996), to support its statement that "the district's policy should be given credence unless it is apparent that the school district's conduct is arbitrary, capricious and to the prejudice of the public interest." (Trial ct. op. at 8.) However, the decision in *Giles* involved review of a school board's action, rather than review of an arbitrator's decision, and our scope of review is significantly different in each case.

an area acknowledged to be a core function of the District. Accordingly, the trial court vacated the arbitrator's award and reinstated the District's decision to terminate Employee's employment.

On appeal to this court, Employee argues that the trial court erred in holding that the arbitrator exceeded his authority on the grounds that Employee's conduct implicated a core function of the District. We agree.

We begin by noting that, contrary to the trial court's observation, our supreme court continues to apply the "essence test," as articulated in Cheney University, when reviewing arbitration awards involving a government employer. *See Greene County* and *City of Easton* (holding that arbitrators' awards were not rationally derived from the parties' collective bargaining agreements.) In *Greene County*, the court observed that an award requiring reinstatement of an employee whose egregious misconduct strikes at the very core function of the public enterprise deprives the employer of its ability to discharge that essential function and, thus, "[a]n arbitrator's award granting reinstatement in such a situation *would not be rational and would therefore fail the essence test.*" *Greene County*, 578 Pa. at 362, 852 A.2d at 308 (emphasis added).[8]

■■■■ Next, we turn to the collective bargaining agreement at issue. As the arbitrator noted, the District's policy does not address off-duty conduct. Indeed, the District is not granted carte blanche in developing policies but must do so in a manner consistent with applicable constitutional and statutory authority. Section 510 of the Code, 24 P.S. § 5–510, authorizes school districts to adopt reasonable rules and regulations and provides in relevant part as follows:

> The board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct and deportment of all superintendents, teachers, and other appointees or employes *during the time they are engaged in their duties to the district,* as well as regarding the conduct and deportment of all pupils attending the public schools....

24 P.S. § 5–510 (emphasis added). The arbitrator recognized that prohibiting drug use *in the workplace* is a core function of the District, but *the arbitrator found no evidence that Employee's conduct implicated that core function.* Employer offered no evidence of any impact on Employee's work performance and no evidence that the positive test result established that Employee was "under the influence" of any controlled substance at any particular time.[9] Thus, there is no evidence that Employee's conduct affected *any* function, let alone a core function, of the District. Where, as here, the record

---

8. Because our supreme court has considered a public employer's core function as *a factor in analyzing the second prong of the essence test,* decisions describing a core function analysis as the core function "test" or "exception," or as imposing "a legal restriction on the arbitrator's authority to interpret an agreement," are inaccurate and somewhat misleading. Thus, while PSEA, in its Brief of Amicus Curiae, argues forcefully and eloquently that the "core function test" is inappropriate in all arbitration cases, we interpret the supreme court's decisions in this area as holding that consideration of a public employer's core function is an essential part of the analysis under the essence test.

9. Because the arbitrator emphasized the lack of evidence in this regard, we reject the District's argument that, under the arbitrator's award, an employee may step off school property, take drugs and return to school without the risk of disciplinary action.

fails to establish that the employee engaged in conduct that impacted the employer in *any* way, consideration of the employer's core functions is unwarranted and, in this case, constitutes error.

We note that this case is factually distinguishable from other "core function" cases, in that the arbitrator here found that Employee was not guilty of the serious misconduct with which she was charged and for which she was terminated.[10] Moreover, in *Office of the Attorney General v. Council 13, American Federation of State, County & Municipal Employees, AFL–CIO*, 577 Pa. 257, 844 A.2d 1217 (2004), our supreme court upheld an arbitration award reinstating an employee even though the arbitrator determined that the employee *committed* the off-duty misconduct for which he was terminated. In that case, a narcotics agent (employee) employed by the Office of the Attorney General (employer) was stopped by a police officer while driving a state vehicle. The police officer observed signs of intoxication, including slurred speech, glassy eyes, an unsteady gait and an odor of alcohol. After investigating the matter, the employer charged the employee with: (1) unbecoming conduct; (2) use of alcohol while off-duty; (3) operation of an official vehicle while off-duty and while using alcohol; (4) violations of standards of professional courtesy and etiquette; and (5) unautho-

rized use of departmental equipment. The employee was terminated after an investigating agent found validity to the first three charges. The employee filed a grievance, and the matter proceeded to arbitration. The arbitrator found that the employee *had* committed the alleged misconduct; however, the arbitrator considered extenuating circumstances and concluded that the employer did not have just cause to terminate the employee. On appeal, the Commonwealth Court equated the finding of misconduct with the contractual requirement of just cause and vacated the arbitrator's award.

On further appeal, the supreme court repeated that the applicable standard of review is the essence test as set forth in Cheney University.

> In setting forth this two-prong test, we emphasized the deferential nature of the review.
>
> Specifically, strict adherence to the essence test is mandated by our Commonwealth's strong historical preference for the swift and efficient means of settling disputes that arise under a collective bargaining agreement by a grievance procedure culminating in binding arbitration. This preference has its roots both in statute and in our case law. . . .
>
> Thus . . . courts should play an extremely limited role in resolving such disputes.

---

10. *See, e.g., Greene County* (vacating the arbitrator's reinstatement of an employee of the county's Children and Youth Services where the arbitrator determined that the employee engaged in the misconduct for which he was terminated and placed the safety of children at serious risk); *City of Easton* (vacating an arbitrators' reinstatement of an employee to his position at a city water treatment facility where the arbitrators found he had stolen time, failed to fill a chemical feed bin with the proper amount of chemicals, failed to properly complete chemical feed reports and left work without permission); *Philadelphia Housing Authority v. American Federation of*

*State, County and Municipal Employees, District Council 33, Local 934,* 900 A.2d 1043 (Pa.Cmwlth.2006) (holding that an arbitration award was not rationally derived from the collective bargaining agreement where the arbitrator found that the employee committed repeated acts of sexual harassment, including physical assaults); and *Allegheny County Airport Authority v. Construction General Laborers and Material Handlers Union 1058,* 874 A.2d 1250 (Pa.Cmwlth.2005) (vacating an arbitrator's reinstatement of an employee where the arbitrator found that he committed a serious breach of trust by falsifying work records and by improperly using his security badge).

Indeed, "[f]requent judicial disapproval of the awards of labor arbitrators would tend to undermine a system of private ordering that is of the highest importance to the well-being of employer and worker alike."

*Office of the Attorney General,* 577 Pa. at 265–66, 844 A.2d at 1222–23 (citations omitted). The court in *Office of the Attorney General* began its analysis with a review of the parties' collective bargaining agreement. The court observed that the agreement did not define the term "just cause," and the court concluded that, by failing to incorporate a definition of just cause into the agreement, and by casting the arbitrator into the role of resolving disputes arising under the agreement, the parties intended for the arbitrator to have the authority to interpret that term and to determine whether there was just cause for termination in that particular case. The court next determined that it was entirely rational for the arbitrator to interpret this undefined term as permitting consideration of mitigating circumstances. Accordingly, the court reversed the order of the Commonwealth Court and reinstated the arbitrator's award.[11]

■■■ Applying this analysis, we reject the District's arguments that, where Employee avoided drug tests and eventually tested positive for marijuana, the arbitrator's award interferes with the District's right under the CBA to discharge an employee for just cause. "A just cause provision, in its most basic terms, is a negotiated form of limited job security that to a degree restricts the employer's otherwise unfettered right [subject, of course, to applicable constitutional and statutory requirements] to discharge and discipline employees." *Office of the Attorney General,* 577 Pa. at 269, 844 A.2d at 1224 (footnote omitted). Section 514 of the Code authorizes the school board to remove employees for incompetence, neglect of duty, violation of the Code "or other improper conduct." 24 P.S. § 5–514. This statutory authority is reflected in several provisions of the parties' CBA, which provide the District the exclusive right to suspend or discharge for just cause *and* protect employees from disciplinary action taken without just cause. (CBA, Art. III § 1; Art. XXVIII § 2.) The term "just cause" is not defined in the parties' CBA. Pursuant to the supreme court's decision in *Office of the Attorney General,* the parties' failure to define just cause in the CBA and their appointment of the arbitrator to resolve disputes arising under the CBA reflects the parties' intent to have the arbitrator interpret the meaning of "just cause." The arbitrator found the District lacked just cause to terminate Employee, and, because the record contains no evidence that Employee's off-duty conduct violated Policy 551 or had any effect on any District function, we conclude that the arbitrator's award is rationally derived from the parties' CBA.[12]

Accordingly, we reverse.

### ORDER

AND NOW, this 17th day of July, 2007, the order of the Court of Common Pleas of

---

11. In so doing, the court concluded as follows: "Finally, we do not find that the award, reinstating an officer without back pay *for off-duty misconduct* has required the governmental employer to bargain away control over core powers that are essential to the proper discharge of the functions for which the governmental entity is responsible. *City of Easton.*" *Office of the Attorney General,* 577 Pa. at 273, 844 A.2d at 1227 (emphasis added).

12. Having so concluded, we need not address Employee's argument that she was denied due process of law.

Lycoming County, dated June 16, 2006, is hereby reversed.

## DISSENTING OPINION BY Judge COHN JUBELIRER.

Respectfully, I must dissent for three reasons. First, I believe the majority ignores, without explanation, recent precedent of this Court. Second, I believe the majority disregards significant statutory authority and precedent that establishes schools as drug-free zones. Third, even if this case does not involve a core function, I believe the Arbitrator's decision is inconsistent and does not meet the essence test.

Although the majority eloquently discusses the core function analysis, I believe it fails to apply, without explanation, binding precedent of this Court. *See Philadelphia Hous. Auth. v. American Fed'n of State, County and Mun. Employees, Dist. Council 33, Local 934(PHA)*, 900 A.2d 1043 (Pa.Cmwlth.2006) (en banc). This recent precedent, issued by this Court sitting en banc, exhaustively discussed core func-

tion. After doing so, the Court devised a test, based on our Supreme Court's precedent, as to how to conduct a core function analysis. Under the principle of stare decisis, we are bound to follow the decisions of our Court unless they are overruled by the Supreme Court, or where other compelling reasons can be demonstrated.[1] *Pries v. Workers' Compensation Appeal Board (Verizon Pennsylvania)*, 903 A.2d 136, 144 (Pa.Cmwlth.2006), *petition for allowance of appeal denied*, 592 Pa. 762, 923 A.2d 412 (2007).

The issue of core function has been debated by the Supreme Court and this Court for years without a clear resolution. In *PHA*, this Court sought to harmonize and crystallize the precedent into a test to assist in determining if core function was applicable to a particular case.[2] This present case presents an opportunity to apply and develop that test. However, despite the significant efforts of this Court in *PHA*, sitting en banc, the majority does not apply the test that this Court established in *PHA*.[3]

---

1. *PHA* is currently before the Supreme Court on a petition for allowance of appeal at No. 335 EAL 2006. According to the docket, the Supreme Court issued a per curiam order in October 2006, holding the petition for allowance of appeal pending the resolution of another case before the Supreme Court at No. 51 WAP 2005, which is an appeal from this Court's decision in *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, No. 1782 C.D.2004, 876 A.2d 1108 (Pa.Cmwlth., filed June 22, 2005).

2. The test we set forth in *PHA* follows:

   First, where serious misconduct is of a sort which has a *direct* negative impact on the public function of the employing agency, such as preying upon or otherwise putting at risk those persons the agency is charged to serve, there is no question that the core function test has been satisfied. On the other hand, where the conduct is of a type

which will have only an *indirect* or *potential* impact on the agency's public duties, such as embezzlement or a breach of trust, two conditions must be met. The misconduct must be work-related *and* must involve dishonesty or other misconduct so egregious that if the agency is unable to curtail such behavior it risks relinquishing control of the orderly functioning of its operations. As in cases like *ISSU, City of Easton* or *Allegheny County*, it is not necessary that the particular act(s) of the discharged employee, standing alone, impairs or threatens the agency's operation, but rather that it is the type of conduct which, if left unchecked, may lead to such a result.
   *PHA*, 900 A.2d at 1051 (footnotes omitted)(emphasis in original).

3. The majority mentions the *PHA* case in a string cite of cases, distinguishing the present case from *PHA* and the other cases included in the string cite because in those cases, the employee was found to be guilty of the serious misconduct with which the employee was

I believe that, by offering no explanation for its action, the majority further confuses an area of law that is already quite confusing. The *PHA* case provides the means for determining whether or not a core function is implicated. The majority errs by concluding that core function is not at issue, without applying the *PHA* case. As I would apply *PHA* as established precedent by this Court in this area of law and, further, would review the case in light of the test this Court articulated in *PHA*, I must dissent from the majority for its failure to do so.

Second, it seems clear to me that one of the core functions of any school district is to provide a safe environment for students and employees. The majority does not seem to question that conclusion but, instead, determines that core function was not implicated here because Employee's drug use occurred offsite, and there was no evidence of actual impairment. I believe this assessment is inconsistent with our law.

Our General Assembly has gone to great lengths to establish schools as drug-free zones. *See, e.g.*, 18 Pa.C.S. § 6317 (establishing drug-free school zones by setting mandatory minimum criminal sentences for drug violations occurring within the area of a school). This Court has similarly strictly interpreted case law involving drug use and schools, even if the use or possession was not on school grounds, and even if there were no apparent signs of impairment. *See, e.g. DeShields v. Chester Upland Sch. Dist.*, 95 Pa.Cmwlth. 414, 505 A.2d 1080, 1084 (1986); *Sch. Dist. of Philadelphia v. Puljer*, 92 Pa.Cmwlth. 329, 500 A.2d 905, 907 (1985). The trial court appropriately relied upon this authority, and I respectfully contend the majority errs by overlooking it.[4]

In our recent articulation of the "core function" analysis, we noted the impact of the core function exception on the concept of "just cause":

> Both the Pennsylvania Supreme Court and this court have held that a government employer cannot bargain away its power to fire for misconduct bearing directly upon the performance of its essential functions; this incapacity (referred to as contractual incapacity) imposes a legal restriction on an arbitrator's interpretation as to what the parties meant by "just cause."

charged, whereas here, the Employee was not. The majority makes no mention of the test set forth in *PHA*.

**4.** Very recently, the United States Supreme Court recognized, in the context of a First Amendment challenge, a public school's " 'important—indeed, perhaps compelling' interest" in deterring drug use by school children. *Morse v. Frederick*, 551 U.S. ——, ——, 127 S.Ct. 2618, 2621, 168 L.Ed.2d 290 (2007). Citing to *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the Court noted the " 'special characteristics of the school environment' *Tinker*, 393 U.S. at 506, 89 S.Ct. 733, and the governmental interest in stopping student drug abuse reflected in the policies of Congress and myriad school boards [that] allow schools to restrict student expression that they reasonably regard as promoting illegal drug use." *Morse* at ——, 127 S.Ct. at 2620. In the decision, the Supreme Court referenced how federal legislation, such as the Safe and Drug-free Schools and Communities Act of 1994, requires "schools receiving federal funds" under the Act to "convey a clear and consistent message that . . . the illegal use of drugs [is] wrong and harmful." *Morse* at ——, 127 S.Ct. at 2628 (quoting 20 U.S.C. § 7114(d)(6) (2000 ed., Supp. IV)). Pennsylvania precedent has also tacitly recognized the "special characteristics of the school environment" as it relates to the area of drugs, drug use, and possession by school employees, even off school grounds. *DeShields v. Chester Upland Sch. Dist.*, 95 Pa.Cmwlth. 414, 505 A.2d 1080, 1084 (1986); *Sch. Dist. of Philadelphia v. Puljer*, 92 Pa.Cmwlth. 329, 500 A.2d 905, 907 (1985).

*PHA*, 900 A.2d at 1046. Toward that end, Section 514 of the Public School Code of 1949 (Code)[5] establishes that school boards "**have the right** at any time **to remove any of its** officers, **employes,** or appointees **for** incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other **improper conduct.**" 24 P.S. § 5-514 (emphasis added). Our precedent establishes that drug-related conduct, such as possession or use, occurring off school grounds, may constitute improper conduct under Section 514 of the Code for purposes of firing a school employee. *DeShields v. Chester Upland Sch. Dist.,* 95 Pa. Cmwlth. 414, 505 A.2d 1080, 1084 (1986) (en banc); *Puljer,* 500 A.2d at 907. In both of these cases, the school boards discharged custodians for drug offenses that did not occur on school district property, and this Court upheld the decisions of each board. In *Puljer,* we rejected a trial court's conclusion that the custodian's drug possession was not punishable because it occurred off school grounds. We held that:

> We vigorously disagree with the trial court's interpretation of this section.

The trial court's holding that improper conduct must occur on or about school property is wholly without foundation in the statutory language. No qualification is attached to the phrase "other improper conduct". The School Board has discretion in deciding what conduct is improper for its employees who act as adult models for school children. To limit this discretion because of the location or effect of the conduct is not reasonable, and is inconsistent with this Court's case law. *See, e.g., Lesley v. Oxford Area School District,* 54 Pa. Cmwlth. 120, 420 A.2d 764 (1980) (teacher's dismissal for shoplifting at a supermarket upheld as immoral conduct.)

We hold that whether improper conduct takes place on or off school property or whether it affects job performance is irrelevant. The only question presented to the Board was whether Appellee's possession of controlled substances constituted improper conduct. We hold that it did.

*Puljer,* 500 A.2d at 907.[6] As we noted in *PHA,* "serious misconduct is of a sort

---

5. Act of March 10, 1949, P.L. 30, 24 P.S. § 5-514.

6. We reached a near identical result in *DeShields.* In *DeShields* a custodian was arrested, off district property, for the possession of 115 grams of marijuana, and a criminal proceeding was brought against him. The marijuana was excluded from the criminal case under the exclusionary rule, resulting in the dismissal of the criminal charges and the expungement of the custodian's arrest and prosecution. Following the entirety of the criminal proceeding, the school board conducted a hearing to terminate the custodian's employment or to reinstate his employment (he had been suspended without pay shortly after the arrest). The board concluded there was sufficient evidence to determine that he was in possession of the illegal substances to merit his termination, so the board voted to terminate him. This Court affirmed, noting that, in a previous case, it concluded that a custodian's harassing phone calls constituted sufficient basis to terminate his employment under Section 514, such that "the possession of illegal narcotics by a school custodian, a much more serious offense, must also be considered improper conduct [particularly because t]here is no question that a school custodian would have ample access to the student body, or a certain segment of a student body, if he had a mind toward that purpose." *DeShields,* 505 A.2d at 1084.

Although both *DeShields* and *Puljer* arise from different procedural circumstances—specifically, local agency appeals of school board determinations and not arbitration appeals—the analysis of the provisions of the Code applied in each are instructive in our resolution here. Both indicate that, within the context of schools, illegal drug use and possession are issues for which the Code gives Districts significant authority to discipline.

which has a *direct* negative impact on the public function of the employing agency ... putting at risk those persons the agency is charged to serve." *PHA,* 900 A.2d at 1051 (emphasis in original). Applying the facts of this case to the test set forth in *PHA,* I agree with the trial court and would find that the conduct at issue has a direct negative impact on the District's functioning.

Finally, the majority places much weight on the factual findings of the Arbitrator and concludes that, under the essence test, we are bound by those factual findings. While I agree that we are bound by the factual findings of the Arbitrator under the essence test, the decision of this Arbitrator does not, itself, seem rationally derived from the collective bargaining agreement, as is required by the essence test. *State Sys. of Higher Educ. (Cheyney Univ.) v. State College Univ. Prof'l Ass'n (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405 (1999)

Although the Arbitrator's decision seems to find that Employee engaged in no wrongdoing that was subject to punishment, the Arbitrator nonetheless imposed a severe sanction. The Arbitrator initially reasoned that "an employer generally can not [sic] control an employee's off duty behavior" and that the District in this case was "trying to extend control of an employee's off duty behavior beyond the language of it's [sic] written policy." (Arbitrator Decision at 8.) The Arbitrator, thus, completely discounted the fact that Employee *went to work with marijuana in her blood system* and, instead, characterized the case *as one involving off-duty actions that are not subject to the policy.* The clear result that should follow from

this is that Employee is not subject to discipline.

The Arbitrator, however, took a different course and imposed a severe sanction on Employee of nine months of salary loss. In explaining the basis for this sanction, the Arbitrator reasoned that "when confronted with drug use in the off hours, by an employee who refuses to admit such behavior until absolutely facing an inescapable result [sic] disciplinary action is justified." (Arbitrator Decision at 8.) Given the Arbitrator's statement that the drug policy did not cover the off-duty use of drugs, it is inconsistent for the Arbitrator to believe that Employee's refusal to discuss her off-duty use is, nonetheless, punishable. If her conduct was not covered by the collective bargaining agreement and the drug policy, then there was no basis upon which to sanction her, period.

The Arbitrator did explain the basis for imposing a penalty, stating that "[p]rohibiting drug use in the workplace clearly is a core function of the District" and "consideration must be given to the District's obligation to protect the health, safety and welfare of the students as stated in Policy 551." (Arbitrator Decision at 8.) So, after stating that the drug policy did not apply to the conduct off-hours, the Arbitrator then stated that the policy had to be considered. In explaining why it had to be considered, the Arbitrator relied on the District's core function of preventing drug use at school.[7]

The effect of this discussion, which the majority, in its ruling, ends up endorsing, is the implicit establishment of a de facto "quasi-core function." The Arbitrator's decision effectively provided that, while the District, as part of its core function,

---

7. The Arbitrator phrased it in this matter: "consideration must be given to the District's obligation to protect the health, safety and welfare of the students as stated in Policy 551 and the Grievant's *protracted delay in admitting* marijuana use." (Arbitrator Decision at 8 (emphasis added).)

can absolutely control drugs at school, it can "kind of" control drug use at home—as long as it does not fire the employee. I would suggest that this simply is not rational. If the conduct of Employee coming to work with drugs in her system is not a violation of the drug policy or the collective bargaining agreement because the use occurred at home, and if the District's core function is not implicated, there is simply no basis upon which to punish her.[8] For these reasons, I find the Arbitrator's decision internally inconsistent and not rationally derived from the collective bargaining agreement; therefore, I would conclude that it does not meet the essence test.

One other point that needs to be considered is that the critical date in this case really is when Employee was injured at work. The Arbitrator had mentioned that there was no evidence that she was impaired at the time of the accident, but he seemingly failed to fully appreciate that the reason for the lack of evidence was Employee's efforts at obstructing such a test. She went to great lengths to avoid taking a drug test at the time of the injury and did not do so until two weeks later. The nature of her work puts her in proximity with children and affords her an opportunity to put them at risk, whether intentionally or negligently. Our case law includes examples of students injured, not by their teachers who deal with them directly on a daily basis, but by others within the school who deal with them indirectly, like custodians. *See generally Repko v. Chichester Sch. Dist.,* 904 A.2d 1036 (Pa. Cmwlth.2006), *petition for allowance of appeal denied,* 592 Pa. 769, 923 A.2d 1175 (2007) (involving a child who was injured when a table that was negligently placed against a wall fell on the child). The work the custodians perform in our schools is important and, indeed, as illustrated in *Repko,* when that work is performed negligently, it can literally cause bodily harm to the children within the school. The critical point is whether, at the time that she was injured, Employee was under the influence and, because of her own tactics, we will never know.

In summary, we are applying an Arbitrator's decision when it should be ignored, and ignoring mandatory and persuasive authority when they should be applied. This case involves a core function of the District, and the Arbitrator is without authority to interfere with the District's handling of this particular matter. For the reasons expressed above, I must respectfully dissent.

President Judge LEADBETTER joins in this dissenting opinion.

---

8. I agree with the astute analysis set forth by the trial court on this particular facet of the Arbitrator's decision:

> [T]he arbitrator's decision also creates an awkward question about the suspension without pay he ordered for the employee. While the arbitrator seems to interpret the school district's drug-free work place policy not to be violated, because the usage of marijuana did not occur at work, and did not affect the employee's job performance, he still suspended her without pay for a nine month period. Was this for insubordination or her untruthfulness initially when confronted with the test result? If so, this conduct clearly occurred at work. Did the arbitrator simply decide to fashion his own view of the appropriate punishment for the circumstances presented?
>
> It has been previously noted by the Pennsylvania Supreme Court that an important caveat to the concept of judicial deference to decisions in arbitratio[n] is that an arbitrator is confined to interpretation and application of the collective bargaining agreement: "he does not sit to dispense his own brand of industrial justice."

(Trial Court Op. at 9 (citations omitted).)