OPINION BY
JUDGE BROBSON
In this negligence action, Appellant Ronhilde Gillingham (Gillingham) appeals from an order of the Court of Common Pleas of Delaware County (trial court), which granted the County of Delaware’s (County) motion for summary judgment and dismissed Gillingham’s personal injury complaint with prejudice. In so doing, the trial court concluded that the County was immune from liability for the injuries Gilling-ham sustained after a fall in the Delaware County Recorder of Deeds Office. For the reasons set forth below, we affirm.
I. BACKGROUND
For purposes of summary judgment, the undisputed material facts are as follows. On November 12, 2012, Gillingham visited the County Recorder of Deeds Office to conduct title searches. Gillingham sat to conduct searches at a County computer, and her foot became entangled in the computer cables and wires under the computer cubicle. With her foot still entangled in the computer cables, Gillingham stood up to walk away from the computer, tripped, and fell.
In a complaint filed on October 9, 2014, Gillingham named the County and the Recorder of Deeds as separate defendants. (Reproduced Record (R.R.) at 7a-12a.) The County filed preliminary objections on behalf of the Recorder of Deeds, arguing that the Recorder of Deeds cannot be sued as an entity distinct from the County. (Id. at 15a-16a.) Gillingham amended her complaint, dropping the Recorder of Deeds as a defendant and re-alleging that the County’s negligence directly and proximately caused her injuries. (Id, at 44a-49a.) Specifically, Gillingham alleged that the County was negligent by its failure to inspect and maintain the floor and failure to make safe or remove the foreign substance — ie., *877 the computer cables — from the floor. (Id. at lla-12a, Compl. ¶ 19.)
The County filed an answer and new matter, denying the material allegations of Gillingham’s complaint and asserting that the County was immune under what is commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. §§ 8541-8542. (Id. at 51a-58a.)
On September 25, 2015, following the completion of discovery, the County filed a motion for summary judgment, in which it again argued that the County was immune under the Tort Claims Act. {Id. at 61a-65a.) The County attached to its motion the affidavit of Joseph DeVuono, who placed the computers in their location at the Recorder of Deeds Office. {Id. at 203a.) In his affidavit, Mr. DeVuono states:
The computers and cubicles may be moved for repairs or for cleaning. There is no hardwiring of the computers at the individual stations and nothing at the computer station is bolted or attached to the floor or walls. The computer station cubicle itself as well as each computer are fully moveable and are not affixed in anyway [sic] to the floor or wall.
{Id. at 203a.) The County argued that the “real property exception” is not viable in this case because “none of [the computer cables] are affixed or wired to the real estate.” (Id. at 74a.) In response, Gilling-ham argued that it is not necessary for her to show that a fixture to the real property caused the injuries. (Id. at 225a-31a.) Instead, Gillingham contended, under the approach from our Supreme Court’s decision in Grieff v. Reisinger, 548 Pa. 13, 693 A.2d 195 (1997), it is sufficient for Gillingham to show that the County was negligent in its care, custody, or control of the real property. (Id. at 226a.) Gillingham argued that the County was negligent in its maintenance of the real property, namely, the floor in the Recorder of Deeds Office. (Id. at 230a.)
On November 17, 2015, the trial court granted the County’s motion for summary judgment and dismissed Gillingham’s complaint against the County with prejudice. Gillingham filed a notice of appeal with this Court, and the trial court issued an opinion pursuant to Pa. R.A.P 1925(a) on May 16, 2016. In explaining its ruling, the trial court cited prior cases from this Court and appears to have concluded that the approach from Blocker v. City of Philadelphia, 563 Pa. 559, 763 A.2d 373 (2000), is more applicable than the approach set forth in Grieff.
On appeal,[1] Gillingham essentially argues that the trial court erred in applying the Blocker approach rather than the Grieff approach to Section 8542(b)(3) of the Tort Claims Act, 42 Pa. C.S. § 8542(b)(3). Gillingham contends that the trial court erred because she alleged that the County’s negligent care, custody, or control of the floor in the Recorder of Deeds Office, rather than the computer cables, caused her injuries. Thus, Gillingham argues, the approach from the Grieff line of cases is the most applicable analysis. Gillingham also appears to argue that the maintenance of an object of personalty can fall within Section 8542(b)(3)’s exception for real property.
II. DISCUSSION
A. The Real Property Exception to Governmental Immunity
“Generally, local agencies are immune from tort liability under Section 8541 *878 of the Tort Claims Act.” Gibellino v. Manchester Twp., 109 A.3d 336, 342 (Pa. Cmwlth. 2015). A local agency may, however, be liable for damages that are: (1) recoverable under common law or a statute creating a cause of action; (2) caused by the negligent act of the local agency or its employees acting within the scope of their employment; and (3) caused by one of the specific acts enumerated in Section 8542(b) of the Act. Section 8542(a) of the Tort Claims Act.
At issue in this appeal is whether Gillingham failed to state a claim under Section 8542(b)(3) of the Tort Claims Act, which is referred to as the “real property exception” to governmental immunity.[2] Section 8542(b)(3) of the Tort Claims Act provides:
(b) Acts which may impose liability.— The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
[[Image here]]
(3) Real property. — The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, “real property” shall not include:
(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;
(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;
(iii) streets; or
(iv) sidewalks.
This exception applies “where acts of the local agency or its employees make the property unsafe for the activities for which it is regularly used, for which it is intended to be used or for which it may reasonably be foreseen to be used.” Moles v. Borough of Norristown, 780 A.2d 787, 791 (Pa. Cmwlth. 2001). “Because of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed.” Lockwood v. City of Pittsburgh, 561 Pa. 515, 751 A.2d 1136, 1139 (2000).
There are two approaches that can be used to determine whether to apply the real property exception to immunity under the Tort Claims Act — the Griejf approach and the Blocker approach. Repko v. Chichester Sch. Disk, 904 A.2d 1036, 1040 (Pa. Cmwlth. 2006). Both approaches have been applied by the courts. Id. We acknowledge that “at times, deciding which approach to apply under a given set of facts is challenging.” Id. In deciding which approach to apply, this Court determines which line of *879 cases has more analogous facts pertaining to causation.
Under the Grieff approach, the determinative inquiry is whether the injury is caused by the care, custody, or control of the real property itself. Id. In Grieff, our Supreme Court held that the real property exception applied to injuries caused by the alleged negligent care of a fire association’s property. Grieff, 693 A.2d at 197. There, the fire chief poured paint thinner onto the floor to remove paint from the floor. Id. at 196. The paint thinner spread across the floor and caught fire under a refrigerator, causing severe injuries to a bystander. Id. The Court explained that the fire chiefs alleged negligence was in the paint removal, and paint removal clearly fell within the exception’s language of the care of the property. Id. at 197. The Supreme Court held, therefore, that the real property exception applied, and the chief and fire association were not immune. Id.
In cases that followed the model set forth in Grieff, the cause of the injury was clearly related to the maintenance of the real property. For instance, in Hanna v. West Shore School District, 717 A.2d 626 (Pa. Cmwlth. 1998), this Court held that the real property exception applied to the allegedly negligent cleaning of a school hallway. Hanna, 717 A.2d at 629. Likewise in Snyder v. North Allegheny School District, 722 A.2d 239 (Pa. Cmwlth. 1998), this Court held that the real property exception also defeated immunity where a school allegedly failed to care for the landing at the top of a set of stairs, where a visitor slipped and fell on ice and snow. Snyder, 722 A.2d at 240.
Turning to Blocker, the other seminal case in the realm of the real property exception, the Supreme Court addressed the exception in an action where a concert attendee sustained injuries after the bleachers on which she was sitting collapsed. Blocker, 763 A.2d at 374. This Court held that a question existed as to whether the City intended the bleachers to be part of the realty. Id. at 376. The Supreme Court reversed this Court’s determination, holding that an owner’s intention with regard to chattel is only relevant where the chattel is, in fact, affixed to the realty. Id. The Supreme Court concluded that the bleachers were clearly personalty. Id. The Supreme Court held, therefore, that the real property exception did not apply to the concert attendee’s injuries. Id.
The Supreme Court provided the guidelines for determining if the object that causes an injury is real or personalty:
Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty. ... Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty.... Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable.
Id.' (emphasis and citations omitted) (quoting Clayton v. Lienhard, 312 Pa. 433, 167 A. 321, 322 (1933)).
*880 Under the Blocker approach, the determinative inquiry is whether the injury is caused by personalty, which is not attached to the real estate, or by a fixture, which is attached. Repko, 904 A.2d at 1040. Thus, under a Blocker analysis, if the injury is caused by the real property, including a fixture, the real property exception overrides governmental immunity. Mandakis v. Borough of Matamoras, 74 A.3d 301, 305 (Pa. Cmwlth. 2013), appeal denied, 624 Pa. 667, 84 A.3d 1065 (2014). If the injury is caused by personalty that is merely on the real property, however, the political subdivision remains immune. Id.
B. Application
Gillingham essentially contends that the trial court erred by applying the analysis from Blocker rather than the analysis from Grieff[3] She argues that the *881 County was negligent in its care, custody, or control of the real property of the Recorder of Deeds Office by faffing to make the floor safe. Gillingham further suggests that it was the floor, rather than the actual computer cables, that caused her injuries. Our recent cases Repko and Sanchez-Guardiola v. City of Philadelphia, 87 A.3d 934 (Pa. Cmwlth. 2014), are instructive.
In Repko, a table that was placed on its side in a school gymnasium fell onto a student and injured her. Repko, 904 A.2d at 1037. The student alleged that she sustained the injuries as a result of the school’s negligent maintenance of real property under its care, custody, and control — the gymnasium. Id. at 1037-38. This Court rejected the student’s attempt to take a Blocker factual scenario and assess it under a Grieff analysis: “[Although Repko frames the issue in terms of the negligent care of the gymnasium, which is real property, in fact, Repko was injured by a table that fell on her in the gymnasium.” Id. at 1042 (emphasis omitted).
Similarly, in Sanchez-Guardiola, this Court rejected the applicability of the real property exception when a traveler fell in the airport. Sanchez-Guardiola, 87 A.3d at 941. There, the traveler tripped after she walked between two flower pots, which blocked from view an unmarked platform that was similar in appearance to the surrounding carpet. Id. at 936. This Court rejected the argument that the platform or stage constituted a dangerous condition of the real property. Id. at 939. Instead, this Court held that because the moveable platform was not affixed or attached to the surrounding floor, it was an item of personalty akin to furniture and not part of the real property. Id. at 941.
Here, despite Gillingham’s attempt to couch the cause of her injury as a problem with the care, custody, or control of the floor, she was not injured as a result of the floor being negligently maintained. Rather, she tripped because her foot was entangled in computer cables when she tried to stand up and walk away from a computer cubicle. The uncontroverted evidence on record, including the affidavit from Joseph *882 DeVuono, shows that the computer cables were not affixed to the real property. Gill-ingham attempted to frame the issue as negligent care of the Recorder of Deeds Office floor, just as the student in Repko alleged negligent care of the gymnasium and the traveler in Sanchez-Guardiola alleged negligent care of the airport floor. As in those cases, however, the cause of Gillingham’s injury was the personalty— ie., the computer cables — rather than the surrounding real property.
Gillingham also cites Martin By & Through Martin v. City of Philadelphia, 696 A.2d 909 (Pa. Cmwlth. 1997) (Martin by Martin), for support of the argument that “an object or substance on a local agency’s property might fall within the real property exception post-Grieff.” (Gillingham Br. at 29.) In Martin by Martin, a minor football player tripped and fell onto a metal pipe at a recreational park, Martin by Martin, 696 A.2d at 910. The metal pipe was not affixed to the property at the time that the minor football player fell onto it. Id. This Court remanded to the trial court to resolve the factual discrepancy as to whether the pipe was placed in the park by third parties or previously affixed to the property. Id. at 912. Thus, the case would only proceed if the metal pipe was at one point affixed to the property. See Mandakis, 74 A.3d at 305 n.5 (discussing our holding in Martin by Martin). Importantly, Martin by Martin does not stand for the proposition that negligent care, custody, or control of personalty falls within the real property exception.
Accordingly, Martin by Martin does not provide any support to Gilling-ham in this case. If the metal pipe in Martin by Martin was in fact affixed to the property, which this Court did not determine, that fact alone distinguishes it from the computer cables in this case, Gillingham’s suggestion that an object or substance on a local government’s property can fall within the real property exception is not an accurate reflection of the law because the inclusion of the word “object” implies that personalty can fall within the exception. An object on a political subdivision’s real property does not fall within the exception unless it is a fixture. Mandakis, 74 A.3d at 305. The computer cables were not affixed to the Recorder of Deeds Office and are not part of the real property.
III. CONCLUSION
Because the real property exception applies only to real property, Gillingham’s injury from computer cables does not fall within the exception. The County, therefore, is immune under the Tort Claims Act. The order of the trial court is affirmed.
ORDER
AND NOW, this 14th day of February, 2017, the order of the Court of Common Pleas of Delaware County is AFFIRMED.

. This Court’s standard of review of a trial court’s order granting summary judgment is de novo, and our scope of review is plenary. Pyeritz v. Commonwealth, 613 Pa. 80, 32 A.3d 687, 692 (2011). Under this standard, we may reverse a trial court’s order only for an error of law. Id.

. There has been some confusion, both in this case and in Pennsylvania precedent, about the shorthand name to be used for Section 8542(b)(3) of the Tort Claims Act. For clarity, we will refer to the exception in Section 8542(b)(3) of the Tort Claims Act as the “real properly exception," because "real property” is the language used in the statute. We will refer to Section 8522(b)(4) of the Sovereign Immunity Act, 42 Pa. C.S. § 8522(b)(4), on the other hand, as the “real estate exception,” because that is the language that the General Assembly used in that statute. Part of the confusion may stem from the joint origin of sovereign immunity and governmental immunity prior to the enactment of their corresponding statutes. See Dorsey v. Redman, 626 Pa. 195, 96 A.3d 332, 340 (2014). Regardless, the Supreme Court of Pennsylvania has held that because the statutory language in these two distinct exceptions "varies markedly" from one another, they should not be interpreted "in lockstep.” Jones v. Se. Pennsylvania Transp. Auth., 565 Pa. 211, 772 A.2d 435, 444 (2001).

. Gillingham also challenges the trial court’s reliance on Moon v. Dauphin County, 129 A.3d 16 (Pa. Cmwlth. 2015), appeal denied, 138 A.3d 7 (Pa. 2016). In Moon, the claimant, a resident of a work release center, slipped and fell on a fenced-in walkway covered by ice while exiting the center. The claimant filed an action for personal injuries, averring, in part, that Dauphin County was negligent in restricting entry and exit from the center to an area open to the elements, because of the likelihood of hazardous conditions developing during certain times of the year, and also was negligent in designing of the layout of the center. The claimant further averred that Dauphin County’s negligent design constituted the direct and proximate cause of his fall, because ice had accumulated on the walkway outside the only entrance/exit that residents of the center were permitted to use. The claimant’s negligent design claim appeared to be based on his assertion that the design of the center was flawed, because it provided only one entrance/exit for residents of the center, and, therefore, residents had no option regarding which route to take during inclement weather. Specifically, because of the fenced-in nature of the walkway associated with the single entrance/exit, the claimant contended that he had no ability to go left or right; instead, he had to pass through the gate into icy/slippery conditions. The trial court, analyzing the matter under the real estate exception to sovereign immunity (as opposed to the real property exception to governmental immunity), determined that the claimant’s slip and fall was the result of wintiy weather and that Dauphin County did not have actual or constructive notice of a dangerous condition. As a result, the trial court concluded that the claim failed under the "hills and ridges doctrine.” The trial court, addressing the claimant’s negligent design claim, then concluded that the lack of an additional walkway did not constitute a "dangerous condition" of real estate.
On appeal to this Court, we concluded that the claimant failed to satisfy the requirement of Section 8542(a)(1) of the Tort Claims Act due to application of the hills and ridges doctrine, "which protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevation.” Moon, 129 A.3d at 22-23 (quoting Morin v. Traveler’s Rest Motel, Inc., 704 A.2d 1085, 1087 (Pa. Super. 1997)). Pursuant to Section 8542(a)(1) of the Tort Claims Act, in order for a local agency to be liable for damages, the damages must “be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense” of governmental or official immunity. We then considered whether the claimant’s negligent design claim fell within the real property exception to immunity set forth in the Tort Claims Act. In analyzing that issue, the Court, when summarizing the law surrounding the real property exception, admittedly did not incoiporate the holding of Grieff into its summary and considered cases involving both the real property and real estate exception and pre-Grieff case law. Ultimately, however, our analysis was simple — the claimant's injury was caused by the walkway, and, therefore, any "design flaw must be of the walkway and not the failure to have an alternate route.” Moon, 129 A.3d at 25 (emphasis added). We then observed that the claimant did not contend that there was defect "of” the walkway and did not contend that the slippery condition "on” the walkway was caused by the walkway. Id. at 25-26. Nevertheless, even if we had considered the slippery condition on the walkway, our result would have been the same, because under the hills and ridges doc *881 trine there could be no liability based on the icy conditions under the circumstances in Moon.
Here, the trial court appears to have interpreted our decision in Moon as an implicit overruling or abandonment of the Supreme Court’s holding in Grieff and its progeny. See Snyder v. N. Allegheny Sch. Dist., 722 A.2d 239, 245 (Pa. Cmwlth. 1998) (applying Grieff to hold that "a dangerous condition or defect when located ‘on’ real property could fall within the real property exception contained in Section 8542(b)(3) of the Tort Immunity Act” and setting forth list of other cases holding that pre-Grieff "on-of” distinction no longer applies). As noted above, under the Grieff approach, the determinative inquiry is whether the injury is caused by the care, custody, or control of the real property itself. Moreover, the inquiry encompasses both the dangerous conditions of the real property and the maintenance or care of the real property. Our decision in Moon does not address Grieff and its progeny. Clearly, our Court cannot overrule the Supreme Court’s decision in Grieff. Furthermore, panel decisions of this Court, such as Snyder and the cases cited in Snyder, can only be overruled by an en banc panel of this Court. See Commonwealth Court IOP § 257. Thus, Grieff remains valid law, and Grieff and Moon must be interpreted, as best they can, to give effect to each other. Perhaps the main distinction between the two is the application of the hills and ridges doctrine in Moon, which effectively precluded liability for certain weather conditions and thereby negated the "on” real property portion of any analysis.
Any tension that may exist between our holding in Moon and our decisions applying Grieff does not affect our analysis. As discussed above, Moon involved a negligent design claim following a slip-and-fall on an icy, outdoor walkway. Moon, 129 A.3d at 18. Conversely, in this case, Gillingham tripped and fell on an item of personalty, specifically computer cables. Moon, therefore, does not provide any guidance for the Court in this case.