# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quincy Lindsey,               :
           Appellant       :
                      :   No. 1171 C.D. 2024
        v.            :
                      :   Submitted: December 8, 2025
County of Bucks       :

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE MATTHEW S. WOLF, Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                    **FILED: February 17, 2026**

Quincy Lindsey (Appellant) has appealed from the judgment entered in favor of the County of Bucks (County), after the Court of Common Pleas of Bucks County (trial court) granted the County's post-trial motion for judgment notwithstanding the verdict. On appeal, Appellant contends that the County is not immune from suit. We reverse and remand.

## I. BACKGROUND[1]

In March 2020, Appellant was incarcerated at Bucks County Correctional Facility (BCCF). His cell contained a bunk bed, a desk, a sink, a toilet, two plastic chairs, and storage bins. N.T., 4/24/24, at 55-56, 92-93; N.T., 4/26/24, at

---

[1] In reviewing a trial court's decision entering judgment notwithstanding the verdict, "we must read the record in the light most favorable to the verdict winner and afford him the benefit of all reasonable inferences." _Menkowitz v. Peerless Publ'ns, Inc._, 211 A.3d 797, 804 (Pa. 2019). Because the plaintiff "prevailed at trial . . . we give him the benefit of every reasonable inference arising from the evidence, while rejecting all unfavorable testimony and inferences." _Id._ (resolving the Superior Court's decision reversing the trial court's denial of the defendant's motion for judgment notwithstanding the verdict).

39-40. The bunk bed, desk, sink, and toilet were bolted or welded to the floor and walls; only the chairs, mattresses, and bins could be moved. N.T., 4/24/24, at 92-93. When BCCF opened, the bunk beds had ladders welded to them to allow inmates to climb safely to the top bunk. N.T., 4/25/24, at 66. The ladders were part of the bunk bed's original design, which changed in 2019. *Id.*

In 2019, following a series of suicides at BCCF, the County hired an auditor to inspect the facility. *Id.* at 66-67. The auditor determined that the ladders posed a ligature risk and recommended that the County remove them. *Id.* at 67. The auditor also recommended that the County replace the ladders with non-ligature ladders, which are designed to prevent their use in suicide attempts. *Id.* The County removed the ladders but did not install the recommended replacements because non-ligature ladders were "very expensive." *Id.* at 69. At the time of trial, five years after the County had removed the ladders, only 25 of BCCF's 788 cells— approximately 3%—had replacement ladders. *Id.* at 70.

David Kratz, the director of BCCF, testified about the decision to remove the ladders. When asked whether the County performed any study or investigation on how inmates would safely access the top bunks after the County removed the ladders, Kratz responded: "No study was done." N.T., 4/26/24, at 114. Kratz reiterated that the County did not consider how inmates would reach the top bunk because the County "was really focused on getting rid of the ladder[s]" to address the suicide risk. *Id.* at 115 (agreeing to counsel's question).

Additionally, no written policy existed regarding how inmates should access the top bunk. N.T., 4/25/24, at 26-27; N.T., 4/26/24, at 123. When inmates arrived at BCCF, staff did not instruct them on how to climb to the top bunk. N.T., 4/25/24, at 24-25. BCCF staff knew that inmates were using the plastic chairs to

climb to the top bunks. *Id.* at 22-23.

Appellant faced these same conditions: he had few options for accessing the top bunk for his assigned cell. Appellant's cellmate had his personal belongings on the desk adjacent to the bunk bed, which prevented Appellant from stepping onto the desk to reach the top bunk. N.T., 4/24/24, at 54, 58, 94-95. Appellant also could not step onto the lower bunk because inmates considered that very disrespectful and would result in a fight. *Id.* at 64 ("It's really time to fight."), 93-94 ("It's disrespectful to them to be putting your dirty shoes or dirty sandals or slide-ins, whatever you got on your feet.").

Appellant testified that when he arrived at BCCF and asked about the absence of ladders, BCCF staff instructed him to use the chair. N.T., 4/24/24, at 58 ("By the chair. [Ever] since I came to Bucks County, they told me to use the chair to get to the top bunk."). "A couple of the guards and—you know, because they didn't have no ladder and I ain't know how to get up there, like I ain't know how to get to the top bunk. So a couple of the guards had told me and the medical lady, because I was like what kind of—when I first stepped in, I'm like y'all don't got no ladders up in here? They was like, nah, you gotta use the chair, so." *Id.* at 58-59 (responding to counsel's question of "Who told you?").

On March 27, 2020, Appellant attempted to climb to his assigned top bunk using the plastic chair as instructed. He placed his left foot on the ground and his right foot on the chair. *Id.* at 100. As he pushed himself up toward the bunk, the chair slid out from under him. *Id.* at 66. Appellant fell and injured his left arm. *Id.*

Appellant was not the first inmate to fall this way. He testified that he had witnessed another inmate fall from a chair while attempting to access a top bunk. *Id.* at 98-99. Specifically, that inmate "cracked [his] shin, and it was just bloody."

3

*Id.* at 98. The inmate later told Appellant, "It's not safe up in here, you know?" *Id.*

Appellant sued the County for negligence, alleging the County failed "to maintain and ensure the safety of the prison including but not limited to the way in which inmates such as [Appellant] were to access their assigned top bunks, keeping the prison free from defects and dangerous conditions." Compl. ¶ 16. The County also failed "to warn plaintiff of the defective and dangerous condition on the defendant's premises, about which the defendant knew, or in the exercise of reasonable care, should have known." *Id.* The County failed "to take all actions necessary to protect the inmates from the dangerous and defective conditions which caused injuries to" Appellant. *Id.* Appellant also alleged the County failed to appropriately warn of the dangerous conditions and permitted such conditions "to exist at the aforesaid location for an unreasonably long period of time under the circumstances." *Id.* In sum, Appellant alleged that the County's removal of the ladder created a dangerous condition that forced him to use the unsafe alternative of a chair.[2] The County filed an answer and new matter invoking immunity, which

---

[2] Specifically, Appellant alleged that the County was negligent as follows:

a. Failing to maintain and ensure the safety of the prison including but not limited to the way in which inmates such as [Appellant] were to access their assigned top bunks, keeping the prison free from defects and dangerous conditions;

b. Failing to warn plaintiff of the defective and dangerous condition on the defendant's premises, about which the defendant knew, or in the exercise of reasonable care, should have known;

c. Failing to take all actions necessary to protect the inmates from the dangerous and defective conditions which caused injuries to [Appellant];

d. Failing to inspect the aforesaid location and ascertain the hazardous and defective conditions which existed on the real property at the aforesaid date and time;

e. Failure to provide appropriate warnings of the dangerous conditions of the aforesaid area; and

f. Allowing a dangerous condition to exist at the aforesaid location for an unreasonably long period of time under the circumstances.

Compl. ¶ 16(a)-(f).

Appellant denied in reply.

The case went to a jury trial. After Appellant rested, the County unsuccessfully moved for nonsuit based on immunity and Appellant's assumption of the risk. N.T., 4/25/24, at 110. The record does not reflect any proposed points of charge or a charging conference. The court charged the jury with Pennsylvania's suggested standard civil jury instruction for, *inter alia*, duty of care, negligence, and factual cause. N.T., 4/26/24, at 182-84.[3] After receiving the charge, the jury began their deliberations and arrived at a verdict a few hours later. *Id.* at 201, 220-21. The verdict sheet reflects that the jury found that Bucks County was negligent and that its negligence was "a factual cause in bringing about" Appellant's harm. Verdict Slip, 4/30/24. The jury found the County 80% negligent and Appellant 20% negligent, and it awarded total damages of $65,000. N.T., 4/26/24, at 220-21.

The County timely filed a post-trial motion seeking judgment in its favor based on, *inter alia*, immunity. Post-Trial Mot., 5/6/24, at 5-7. On May 29, 2024, the court granted the County's post-trial motion, vacated the verdict in Appellant's favor, and entered judgment for the County. Order, 5/29/24. Appellant timely appealed to the Superior Court and filed a Pa.R.A.P. 1925(b) statement raising three issues. The Superior Court transferred the appeal to this Court.

## II. ISSUES

Appellant contends that the trial court erred in granting judgment

---

[3] "Factual cause. In order for the plaintiff, [Appellant], to recover in this case, the negligent conduct of Bucks County must have been a factual cause in bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual real factor in causing the harm even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor, having no connection or only an insignificant connection with the harm. To be a factual cause, the conduct of Bucks County need not be the only factual cause. The fact that some other causes concur with the defendant's negligence in producing an injury does not relieve Bucks County from liability as long as their own negligence is a factual cause of the injury." N.T., 4/26/24, at 184.

5

notwithstanding the verdict because the trial court "substituted its own findings of fact for those of the jury and misapplied" *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348 (Pa. 2018) (*Brewington II*). Appellant's Br. at 5, 19.

### III. DISCUSSION[4]

*A. Arguments*

In support, Appellant argues that the trial court misunderstood the real property exception to governmental immunity. *Id.* at 20. Appellant reasons that because the trial court misunderstood the law, it mischaracterized the issue as whether the plastic chair Appellant used was real property. *Id.* Appellant contends that the trial court thus failed to consider the County's removal of "the ladders—part of the original safe design of the bunk beds to allow safe access to the top bunk—which created the dangerous and defective design condition" that required Appellant to use the chair in the first place. *Id.* at 21-22 (emphasis omitted) (discussing *Grieff v. Reisinger*, 693 A.2d 195 (Pa. 1997)).

In that regard, Appellant argues that the County's removal of and failure to replace the ladder created the danger that led to Appellant's injury. *Id.* at 23-24 (distinguishing the trial court's reliance on *Mandakis v. Borough of Matamoras*, 74 A.3d 301 (Pa. Cmwlth. 2013), *Repko v. Chichester Sch. Dist.*, 904 A.2d 1036 (Pa. Cmwlth. 2006), and *Blocker v. City of Phila.*, 763 A.2d 373 (Pa. 2000) (*Blocker*)).

---

[4] "An appellate court will reverse the trial court's decision to grant or deny [judgment notwithstanding the verdict] only when it finds an abuse of discretion or an error of law." *Menkowitz*, 211 A.3d at 804. "An appellate court 'stands on a different plane' than a trial court, and it is the trial court that has the benefit of an 'on-the-scene evaluation of the evidence.' As such, while the appellate court may disagree with a verdict, it may not grant a motion for [judgment notwithstanding the verdict] simply because it would have come to a different conclusion. Indeed, the verdict must stand unless there is no legal basis for it." *Id.* (citation modified). The question of immunity under the Political Subdivision Tort Claims Act (Act), recodified at 42 Pa.C.S. §§ 8541-8542, is an issue of law subject to a *de novo* standard of review. *Brewington II*, 199 A.3d at 354-55. In construing the Act, we comply with the Statutory Construction Act of 1972. 1 Pa.C.S. §§ 1501-1991. *Id.*

6

In Appellant's view, the facts closely resemble the facts in *Brewington II*. *Id.* at 24-34.

The County concisely counters that the chair—not a fixture—caused Appellant's injury. Cnty.'s Br. at 6-7 (citing, *inter alia*, *Gillingham v. Cnty. of Del.*, 154 A.3d 875 (Pa. Cmwlth. 2017)). The County reasons that because real property did not injure Appellant, it was immune from Appellant's negligence claim. *Id.* at 8-11 (discussing, *inter alia*, *Brewington II* and *Blocker*, and distinguishing *Grieff*). The County stresses that this Court should focus "on the cause of injury," rather than whether the County should have replaced the ladder or otherwise provided safe access to the top bunk. *Id.* at 5, 10.

### B. Legal Standards

The Act provides that a "local agency shall be liable for damages on account of an injury to a person or property" subject to two conditions. 42 Pa.C.S. § 8542(a). The first condition is that "damages would be recoverable under common law," *e.g.*, negligence, or a statute creating a private cause of action. *Id.* § 8542(a)(1). The second condition is that "the injury was caused by the negligent acts of the local agency" falling within one of nine categories. *Id.* § 8542(a)(2), (b).

One such category is real property. *Id.* § 8542(b)(3). A local agency may be liable for negligent acts involving the "care, custody or control of real property in the possession of the local agency."[5] *Id.* A claim of negligence "may be

---

[5] We state the relevant statutory language:

**(b) Acts which may impose liability.**--The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: . . .

. . .

(3) *Real property.*--The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in

predicated on either an affirmative act, or the failure to act, resulting in negligence in the care, custody, or control of the real property—as the statute, by its express terms, defines the term 'act,' as including 'a failure to act.'" *Brewington II*, 199 A.3d at 355 (citation modified).

By way of illustration, in *Grieff*, the defendant had "poured paint thinner onto the floor" of a fire station "in order to remove paint from the floor near the kitchen." *Grieff*, 693 A.2d at 196. The thinner "flowed across the floor and under the refrigerator," which ignited the thinner and injured the victim. *Id.* The plaintiffs sued the defendants for negligently failing "to exercise due care in using and disposing of flammable materials." *Id.* This Court held the defendants were immune, and the plaintiffs appealed.

Our Supreme Court reversed, holding that the defendants' care (or lack thereof) of the real property "caused the fire that injured" the victim. *Id.* at 197 (stating that the defendants' "alleged negligent care of the property caused" the fire that injured the victim). Accordingly, the defendants were "not immune from suit" because the plaintiffs' claim fell "squarely within the real property exception" to immunity. *Id.*

This Court applied *Grieff*'s reasoning in resolving immunity after a parent slipped and fell on water that had accumulated from damp-mopping of a school hallway. *Hanna v. W. Shore Sch. Dist.*, 717 A.2d 626, 627 (Pa. Cmwlth. 1998). The trial court granted summary judgment to the school based on immunity. *Id.* This Court initially affirmed, but our Supreme Court reversed and remanded for reconsideration in light of *Grieff*. *Id.* at 628. On remand, we held that the real

---

this paragraph, "real property" shall not include [four categories of items not at issue here].

42 Pa.C.S. § 8542(b)(3).

property exception applied because the facts in *Grieff* were "indistinguishable from those involved" in *Hanna*. *Id.* at 629. Accordingly, the school's negligent care of the hallway floor triggered the real property exception. *Id.*

In contrast, *Blocker* examined different circumstances. Specifically, the plaintiff was attending a concert at a facility owned, controlled, and maintained by Philadelphia. *Blocker*, 763 A.2d at 374. The plaintiff was sitting on a bleacher when it collapsed, injuring her. *Id.* The trial court granted summary judgment adverse to the plaintiff, reasoning that "the defective bleacher was not a permanent fixture of the real estate . . . ." *Id.* On appeal, this Court held that a material issue of fact existed as to whether Philadelphia intended the bleacher—undisputedly unaffixed to the real property—to be part of the real property. *Id.* at 374-75 (summarizing this Court's decision).

*Blocker* reversed. Because no party disputed that the bleacher was not affixed to the real property, Philadelphia's intent was irrelevant. *Id.* Absent the bleacher's "attachment to realty," it remained chattel. *Id.* (citation modified) (describing the three classes of chattel, which include furniture). Thus, *Blocker* held that because the bleacher was chattel, Philadelphia was immune. *Id.* at 375-76 (holding that the "bleacher was . . . personalty, and any negligent maintenance of it did not fall within the real property exception to immunity").

Following these decisions, this Court has applied either the *Grieff* or *Blocker* approach in resolving immunity. For example, in *Repko*, in the school gym, someone had improperly stored a folding table, which was "leaning on its side against the bleachers" when it fell on the plaintiff, injuring her. *Repko*, 904 A.2d at 1037. The plaintiff sued the school for negligence, and a jury found in her favor. *Id.* at 1038. The school appealed to this Court, reasoning it was immune under the Act.

9

*Id.* at 1040.

The *Repko* Court recognized the challenges involved in "deciding which approach," *i.e.*, *Grieff* or *Blocker*, "to apply under a given set of facts . . . ." *Id.* *Repko* framed the two approaches as follows: "Under the *Blocker* approach, the determinative inquiry is whether the injury is caused by personalty, which is not attached to the real estate, or by a fixture, which is attached. Under the *Grieff* approach, the determinative inquiry is whether the injury is caused by the care, custody or control of the real property itself."[6] *Id.*

Ultimately, *Repko* selected the *Blocker* approach, reasoning that the plaintiff "was injured by an item of *personalty*, and not real property." *Id.* at 1042 (emphasis in original). *Repko* rejected the *Grieff* approach because the negligence claim was not grounded in "the negligent care of the real property," *i.e.*, failure to clean pooled water or paint thinner left on the floor. *Id.* (explaining that "although [the plaintiff] frames the issue in terms of the negligent care of the gymnasium, which is real property, in fact, [the plaintiff] *was injured by a table* that fell on her in the gymnasium" (emphasis in original)).

Similarly, in *Mandakis*, the plaintiff, while attending a party, "fell over a defective picnic table" that was not affixed to a public park "owned, operated and maintained by the borough." *Mandakis*, 74 A.3d at 301-02 (citation modified). Nevertheless, the plaintiff pleaded that the borough negligently maintained the real property. *Id.* at 302. The borough successfully moved for summary judgment based on immunity, and the plaintiff appealed. *Id.* *Mandakis* affirmed, reasoning that

---

[6] In discussing the two approaches, *Repko* summarized *Canon-McMillan School District v. Bioni*, 561 A.2d 853 (Pa. Cmwlth. 1989). *Repko*, 904 A.2d at 1041. In *Bioni*, this Court held that an 800-pound wood lathe that was unattached to the floor and "injured a student," who was sanding a wood bowl, was not realty. *Id.* The lathe was not realty because "it could be removed without destroying or materially injuring the lathe or the property to which it was annexed." *Id.*; *see generally Bioni*, 561 A.2d at 855.

"although [the] plaintiff frames the issue in terms of the care, custody and control of the park facilities, the fact remains her injury was caused by a broken picnic table, which was not affixed to the property." *Id.* at 305.

More recently, in *Gillingham*, while on county property, the plaintiff tripped and fell after her foot became entangled in computer cables. *Gillingham*, 154 A.3d at 876. The plaintiff argued the county was negligent "in its care, custody, or control of the real property," specifically the floor, which "caused her injuries." *Id.* at 877. The county successfully moved for summary judgment, reasoning that it was immune because none of the cables were "affixed or wired to the real estate." *Id.* (citation modified). *Gillingham* rejected the plaintiff's "attempt to couch the cause of her injury as a problem with the care, custody, or control of the floor [because] she was not injured as a result of the floor being negligently maintained." *Id.* at 881. Rather, the plaintiff "tripped because her foot was entangled in computer cables when she tried to stand up and walk away from a computer cubicle." *Id.*

Following *Gillingham*, our Supreme Court reexamined the real property exception to immunity in *Brewington II*. In that case, a student, while participating in a school gym class, tripped and fell into an unpadded concrete wall. The plaintiff sued the school for negligence, specifically that the school was negligent by "failing to install padded safety mats to cushion the wall." *Brewington II*, 199 A.3d at 350. The plaintiff reasoned that because "no personalty was involved," the "*Grieff* approach should apply." *Id.* at 354. The school successfully moved for summary judgment based on immunity.[7]

---

[7] The plaintiff appealed to this Court, which reversed, holding the school lacked immunity. This Court reasoned that "the analysis of whether the real property exception applies centers on the cause of the injury, rather than the nature of the remedy that should have been provided." *Brewington II*, 199 A.3d at 352 (summarizing *Brewington for Brewington v. City of Phila.*, 149 A.3d 901 (Pa. Cmwlth. 2016) (*en banc*) (*Brewington I*)). This Court held that because the negligence

11

*Brewington II* began by discussing the school's argument "that courts have applied two different approaches in determining whether to apply the real property exception—the approach articulated in *Grieff* . . . , and that considered in *Blocker*." *Id.* Per the school, under the *Grieff* approach, a court "considers whether the injury was caused by an affirmative act involving the care, custody, or control of the real property itself (in that case, negligence in the removal of paint by pouring paint thinner on the floor which ultimately ignited, and implicated the 'care' of real property)." *Id.* The school argued that the student's injury was not the result of an "act that constituted negligent care of the wall" and no evidence existed "that some defect of the wall constituted a dangerous condition." *Id.*

Under the *Blocker* approach, the school stated that a court examines whether the victim's injury was caused by personalty. *Id.* Based on *Blocker*, the school argued it was immune because the negligence claim "pertained to the negligent control of padding, which is personalty." *Id.*

In resolving the school's argument, our Supreme Court reiterated the elements of negligence: "a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff." *Id.* at 355 (citation omitted). The Act does not require "an affirmative act on the part of the local agency. Rather, the

---

claim "concerned an injury caused by real property—*i.e.*, the concrete gym wall—the real property exception to governmental immunity applied regardless of the fact that [the plaintiff] averred that personalty—*i.e.*, the protective mat—would have prevented [the plaintiff's] injury." *Id.* This Court reiterated that the plaintiff's claim "that *the property as it existed was unsafe for its intended and regular use as a gymnasium*; the unprotected cement wall posed a danger to students who used it regularly for gym class, and that dangerous condition was the cause of [the plaintiff's] injury." *Brewington I*, 149 A.3d at 910 (emphasis in original). The school appealed. *Brewington II*, 199 A.3d at 352.

[negligence] claim may be predicated on either an affirmative act, or the failure to act, resulting in negligence in the care, custody, or control of the real property—as the statute, by its express terms, defines the term 'act,' as including 'a failure to act.'" *Id.* (citation modified). With respect to the clause "care, custody or control of real property," *Brewington II* stressed that the term "'care' connotes serious attention [to] the conduct demanded of a person in a given situation and a person's giving attention both to possible dangers, mistakes, and pitfalls and to ways of minimizing those risks." *Id.* (citation modified).

Upon applying these principles, our Supreme Court held that the plaintiff had pleaded a negligence claim falling within the real property exception to immunity. *Id.* at 356-57. Specifically, the plaintiff had pleaded that the school "negligently failed to apply padding to the concrete gym walls." *Id.* at 357. Thus, *Brewington II* held the plaintiff had pleaded negligence "regarding the 'care' of the real property, as that term is commonly understood to include attention to possible dangers to minimize and reduce risk . . . ." *Id.* "In coming to this conclusion, we find the real property exception, by its express definitional terms, includes a failure to provide safety features in situations where such a duty otherwise exists." *Id.* Further, "acts of a local agency which render a property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit." *Id.* (citation modified).

Our Supreme Court held that the plaintiff's claim was similar to the plaintiff's claim in *Grieff*, in which the defendant negligently removed paint by pouring paint thinner on the floor, which ignited. *Id.* at 357. *Brewington II* rejected the school's position that the mats were personal property given "that the unpadded

13

*wall* directly" injured the student. *Id.* (emphasis in original) (agreeing "that the unpadded concrete wall which caused [the plaintiff's] injuries constituted real property in the [defendant's] possession").

*Brewington II* also distinguished *Blocker*, which focused on whether "the collapsed bleachers, which caused the plaintiff's injury" were chattel not fixed to realty. *Id.* Our Supreme Court explained that the "chattel in *Blocker* was the cause of the injury. Here, it was the wall, which is not chattel, but real property, that caused [the plaintiff's] injuries." *Id.* "We reaffirm our decision in *Blocker* to the extent it holds personalty *alone* may not serve as the basis to trigger the real property exception to governmental immunity . . . ." *Id.* at 358 (emphasis added).

### *C. Discussion*[8]

Instantly, the question is whether Appellant's negligence claim relates to the "care, custody[,] or control of real property in" the County's possession under the real property exception to governmental immunity. *See* 42 Pa.C.S. § 8542(b)(3). Such a claim may be grounded in either an affirmative act or a failure to act. *See Brewington II*, 199 A.3d at 355. The *"*analysis of whether the real property exception applies centers on the cause of the injury, rather than the nature of the remedy that should have been provided." *Id.* at 357.

Applying this cause-of-the-injury framework, we select whether to apply the *Grieff* or *Blocker* approach. On one hand, Appellant pleaded (and persuaded the jury) that the County negligently failed to care for the bunk bed, which was welded or bolted to the wall. Specifically, per Appellant, the County's removal of, and failure to replace, the bunk bed ladder created the dangerous condition that

---

[8] We must read the record in the light most favorable to Appellant "as the verdict winner and afford him the benefit of all reasonable inferences," including testimonial and evidentiary conflicts. *See Menkowitz*, 211 A.3d at 804.

14

resulted in Appellant's injury. On the other hand, the chair, *i.e.*, chattel not affixed to real property, slipped, which caused Appellant's injury.

Upon reflection, we hold that the *Grieff* approach controls and that the County is not immune. Under *Grieff*, the focus is the real property itself. The bunk bed is indisputably real property as it was welded or bolted to the wall. The County, however, removed the ladder from the bunk bed and failed to replace it with a safe alternative. These acts rendered the top bunk bed unsafe for its intended use, triggering the real property exception to governmental immunity. Accordingly, the trial court erred in granting judgment notwithstanding the verdict.

The County's two acts regarding the bunk bed rendered the top bunk bed unsafe for its intended use. *See Brewington II*, 199 A.3d at 357. A bunk bed is regularly used for sleeping, which requires climbing to the top bunk. By removing the ladder and failing to provide a safe replacement, the County rendered the bunk bed unsafe for its regular use. Despite this unsafe condition, the County's staff instructed Appellant to use the chair to access the top bunk. *See* N.T., 4/24/24, at 58-59. The chair was Appellant's only option: the desk had his cellmate's belongings on it, and stepping on the lower bunk would provoke a fight. *Id.* at 54, 64, 93-94. Under these circumstances, the chair was the only reasonable means of access available to Appellant, and the County instructed him to use it.

This case thus parallels *Grieff* and *Hanna*. In those cases, the plaintiffs grounded their negligence claims based on the care of real property, *i.e.*, the floor. *See Grieff*, 693 A.2d at 197 (asserting that the act of pouring paint thinner on the floor, which ignited, was negligence); *Hanna*, 717 A.2d at 627 (claiming that accumulated water left on the floor after "damp-mopping" was negligence). Like those plaintiffs, Appellant's claim was grounded on the negligent care of real

15

property, *i.e.*, the bunk bed. The chair may have contributed to Appellant's injury, but the basis of his negligence claim was the negligent care of the bunk bed welded or bolted to the wall, *i.e.*, real property. In *Grieff*, the paint thinner ignited and burned the plaintiff; in *Hanna*, the water caused the plaintiff to slip. *See Grieff*, 693 A.2d at 197; *Hanna*, 717 A.2d at 627. In both, substances other than real property directly caused injury, yet the claims fell within the real property exception because the basis of each claim was negligent care of the floor. The same analysis applies here.

Accordingly, we disagree with the County's reliance on *Blocker* and its progeny. *Blocker* held that because chattel not affixed to real property remains chattel, a claim of negligent maintenance did not trigger the real property exception. *See Blocker*, 763 A.2d at 375-76. *Brewington II* reaffirmed *Blocker*, but only "to the extent it holds personalty *alone* may not serve as the basis to trigger the real property exception." *Brewington II*, 199 A.3d at 358 (emphasis added). The word "alone" is critical. In *Blocker*, the plaintiff's claim was based only on negligent maintenance of the bleachers—chattel—and not any negligent act based on the underlying real property. In contrast, here, the chattel is not alone. The County's negligent care of the bunk bed—real property—is the basis of Appellant's claim and not negligent maintenance of the chair. *Cf. Blocker*, 763 A.2d at 375-76 (rejecting a claim for negligent maintenance of the bleachers).

The same distinction, *i.e.*, the chattel *alone*, separates this case from *Repko*, *Mandakis*, and *Gillingham*. In each, this Court rejected the plaintiff's attempt to frame the claim as negligence regarding real property. The *Repko* folding table, the *Mandakis* picnic table, and the *Gillingham* computer cables were either independently defective or dangerously placed. *See Repko*, 904 A.2d at 1037, 1042; *Mandakis*, 74 A.3d at 302, 305; *Gillingham*, 154 A.3d at 881. In contrast, two acts

16

formed the basis of Appellant's negligence claim regarding real property: the County removed the ladder, and the County failed to replace it. The County's staff then instructed Appellant to use the chair. Appellant did not voluntarily use the chair *alone*. *See Brewington II*, 199 A.3d at 358. He had no choice: he was an inmate, assigned to the top bunk, and had no other reasonable alternative means of access.

In sum, viewing the facts in Appellant's favor as the verdict winner, the County's negligent care of the bunk bed, *i.e.*, real property in its possession, caused Appellant's injury. Under *Brewington II*'s "cause of injury" approach, we identify the negligent act that caused the injury—and not the physical object that contacted the plaintiff. The County's negligent acts, *i.e.*, removing the ladder and failing to replace it, involved the care of real property: "a failure to provide safety features in situations where such a duty otherwise exists." *See Brewington II*, 199 A.3d at 357. The County's negligence resulted in the consequence of Appellant's chair slipping. The chair did not change the basis of Appellant's claim. Accordingly, after narrowly construing the real property exception to governmental immunity, the trial court erred in granting the County's motion for judgment notwithstanding the verdict. *See Menkowitz*, 211 A.3d at 804; *Brewington II*, 199 A.3d at 355.

## IV. CONCLUSION

For these reasons, we reverse the trial court's order granting judgment notwithstanding the verdict and remand with instructions to reinstate the verdict and judgment in Appellant's favor.

_____
**LORI A. DUMAS, Judge**

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quincy Lindsey,       :
    Appellant    :
          :  No. 1171 C.D. 2024
    v.       :
          :
County of Bucks     :

## **O R D E R**

AND NOW, this 17th day of February, 2026, we REVERSE the May 29, 2024 order and judgment entered by the Court of Common Pleas of Bucks County. We REMAND with instructions to reinstate the verdict and judgment in favor of Quincy Lindsey.

Jurisdiction relinquished.

_____
**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quincy Lindsey,            :
           Appellant       :
                          :
          v.              :    No. 1171 C.D. 2024
                          :
County of Bucks          :    Submitted: December 8, 2025

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE MATTHEW S. WOLF, Judge

## <u>OPINION NOT REPORTED</u>

DISSENTING OPINION BY
JUDGE WOLF                           FILED: February 17, 2026

       While I agree with the Majority's cogent explanation of the *Grieff*[1] and *Blocker*[2] approaches to the real estate exception to sovereign immunity, I disagree that the *Grieff* approach applies here based on one inescapable fact: Appellant's injuries were caused by a plastic chair. Because the application of the *Grieff* approach to this scenario improperly broadens the real estate exception to sovereign immunity, I must respectfully dissent.

       While incarcerated at Bucks County Correctional Facility (BCCF), Appellant sustained an injury when he stepped on a plastic chair in an attempt to reach the top bunk of his cell. As described in his own testimony, Appellant's "left foot was still on the ground. I hopped up with my right foot. As soon as I tried to

---

[1] *Grieff v. Reisinger*, 693 A.2d 195 (Pa. 1997).

[2] *Blocker v. City of Phila.*, 763 A.2d 373 (Pa. 2000).

push myself up, the chair slipped out. I fell like that." Notes of Testimony, 4/24/2024, at 100. *See also id.* at 66 (Appellant explaining he "tried to push [himself] up, [and] the chair slipped out") and 59 (Appellant explaining the chair "moved away from [him]" while he was trying to get to the top bunk, resulting in him falling on the ground).

In analyzing the real estate exception to sovereign immunity, the *Blocker* and *Grieff* approaches have emerged. Under *Blocker*, courts analyze whether the injury is caused by personalty, which is not attached to real estate, or a fixture, which is. Under *Grieff*, the question is whether the injury is caused by the care, custody, or control of the real property itself. The Majority aptly summarizes the two approaches, including our Supreme Court's discussion of them in *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348 (Pa. 2018) (*Brewington II*), on which the parties rely.

In *Brewington II*, a student tripped and fell into an unpadded concrete wall during school gym class. The student's mother sued the school for negligence, alleging that the school was negligent in failing to install padded safety mats to cushion the wall. The Supreme Court held that the mother's allegations satisfied the real property exception, explaining:

> Mother has plainly pled that the negligent acts, including the failure to act, of the School regarding the care, custody, and control of real property in the possession of the School caused [student's] injuries. Specifically, we find Mother pled negligence regarding the "care" of the real property, as that term is commonly understood to include attention to possible dangers to minimize and reduce risk, through the assertion that the School negligently failed to apply padding to the concrete gym walls. Moreover, we agree that the unpadded concrete wall which caused [student's] injuries constituted real property in the School's

possession. In coming to this conclusion, we find the real property exception, by its express definitional terms, includes a failure to provide safety features in situations where such a duty otherwise exists. Indeed, our case law confirms that acts of a local agency which render a property unsafe for "the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit." *Mascaro v. Youth Study Center*, . . . 523 A.2d 1118, 1124 ([Pa.] 1987).

*Brewington II*, 199 A.3d at 357. Thus, the Supreme Court applied *Grieff*, reasoning that the County's negligence in caring for the real property at issue caused student's injuries.

In so holding, the Court also distinguished the facts of the case from those present in *Blocker*, highlighting that the concrete wall, which is realty, "directly caused" student's injuries. *Brewington II*, 199 A.3d at 357. By contrast, the *Blocker* plaintiff's injuries were caused by the collapse of bleachers, which is personalty, thus failing to trigger the exception to immunity. *Id.* at 358. The *Brewington II* Court reaffirmed its decision in *Blocker* to the extent it held that "personalty alone may not serve as the basis to trigger the real property exception to governmental immunity." *Id.*

The Majority purports to apply *Brewington II*'s cause-of-injury framework to the instant matter and selects the *Grieff* approach, holding that the County's custody or control of the *bunkbeds* caused Appellant's injury. Specifically, the Majority holds that the County's removal of the ladder and failure to replace it with a safe alternative caused Appellant's fall. While conceding that the chair "may have contributed to Appellant's injury," the Majority holds that the negligent care of the bunkbed is the basis for Appellant's claim, not the chair *alone*. Majority Op. at

16-17 ("[u]nder *Brewington II*'s 'cause of injury' approach, we identify the negligent act that caused the injury – and not the physical object that contacted the plaintiff.")

This analysis departs from *Brewington II's* cause-of-injury framework and is inconsistent with our prior case law. Simply put, this case is distinguishable from *Brewington II* because realty did not physically cause Appellant's injuries. Instead, the "object that contacted the plaintiff," here, the plastic chair, was the "cause of injury."[3] It slipped. The cause of Appellant's injury is so clearly personalty that the plastic chair was actually brought into the courtroom and shown to the jury. *See* N.T., 4/26/2024, at 22, 40. Such could not be possible if Appellant was injured by realty; only personalty is portable. While the Majority focuses on the County's negligence relating to the bunkbed, the bunkbed did not come into contact with Appellant. This fact alone distinguishes this case from *Brewington II*, where the concrete wall (realty) actually caused the student's injuries.

In electing the *Grieff* approach here, the Majority shifts focus from the cause of Appellant's injury (the chair) to the remedy that the County should have provided to inmates (a safer route to the top bunk). The *Brewington II* Court expressly cautioned against this. 134 A.3d at 357 ("the analysis of whether the real

---

[3] And typically, that is the case. For example, in *Blocker*, the collapse of the bleachers (personalty) caused the plaintiff's injury, and the exception to immunity did not apply. In *Repko v. Chichester School District*, 904 A.2d 1036 (Pa. Cmwlth. 2006), a table (personalty) caused the plaintiff's injury, and the exception to immunity did not apply. In *Mandakis v. Borough of Matamoras*, 74 A.3d 301 (Pa. Cmwlth. 2013), a broken picnic table (personalty) caused the plaintiff's injury, and the exception to immunity did not apply. In *Gillingham v. County of Delaware* 154 A.3d 875 (Pa. Cmwlth. 2017), computer cables (personalty) caused the plaintiff's injury, and the exception to immunity did not apply. Conversely, in cases that have applied the *Grieff* approach, the realty itself caused the injury, and the exception did apply. In *Grieff*, paint thinner caused the plaintiff to be injured by the floor (realty), and the exception applied. In *Hanna v. West Shore School District*, 717 A.2d 626 (Pa. Cmwlth. 1998), water accumulated and caused the plaintiff to be injured by the floor (realty), and the exception applied. In *Brewington II*, padded mats were absent, causing the plaintiff to be injured by the wall (realty), and the exception applied.

property exception applies centers on the cause of the injury, rather than the nature of the remedy that should have been provided.").

In my opinion, this case is indistinguishable from *Blocker*. Like the collapsing *Blocker* bleachers, the Appellant here slipped off a plastic chair and sustained injuries. The reason Appellant felt it necessary to use the chair is unfortunate, and, as in all immunity cases, slightly different facts would likely yield a different result. Had Appellant stepped on the bottom bunk and slipped, he may have prevailed in a negligence action alleging the County was negligent in its care, custody, and control of real property. Here, however, Appellant's own testimony is that the plastic chair slipped from under him, causing him to fall and sustain injuries.

This Majority appears to be the first case where a plaintiff's injury was caused by personalty but attributed to realty based on the plaintiff's rationale for using such personalty. Pulling back the proverbial curtain to ascertain why Appellant used the chair has no place in a sovereign immunity analysis under either *Blocker* or *Grieff*. And Appellant's framing of the issue in terms of negligent care of the bunkbeds cannot serve to influence the Court's analysis. *See Repko v. Chichester Sch. Dist.*, 904 A.2d 1036, 1042 (Pa. Cmwlth. 2006) ("although [the plaintiff] frames the issue in terms of the negligent care of the gymnasium, which is real property, in fact, [the plaintiff] was *injured by a table* that fell on her in the gymnasium" (emphasis in original)). Regardless of Appellant's reason for using the chair, the chair remains personalty, and the exception to immunity cannot trigger under these circumstances.

Duty-bound to apply the exceptions to sovereign immunity narrowly, I would be constrained to affirm the trial court's order granting the County's post-trial motion for judgment notwithstanding the verdict.

_____
MATTHEW S. WOLF, Judge